CHOCTAW, OKLAHOMA & GULF R. R. CO. v. TONY
ALEXANDER

(Filed July 30, 1898.)

1. PRAIRIE FIRES—*Act Relating to Damages.* The clause of the eighth section of the act to regulate prairie fires (Statutes of 1893, ch. 38,) which provides that "any railroad company operating any line in this Territory, shall be liable for all damages sustained by fire originating from operating their road," is not invalidated by the fact that it is a part of the statute entitled, "An Act to Regulate Prairie Fires," and that the remaining provisions of the chapter relate to the imposition of civil and criminal liability for those who set out prairie fires with and without negligence, and by reason of the fact that it is a portion only of the section of that chapter, the remainder of which section relates to other matters. Neither is the provision referred to rendered ambiguous by the fact that it is included in that chapter.

2. STATUTE—*Ambiguity.* The provision in question cannot be set aside by the application of principles which might be applicable if there were any ambiguity in the act necessary to be determined.

3. STATUTE—*Construction of.* The primary principle of interpretation is to observe and be guided by the language of the statute, and, if it is clear and free from ambiguity, there is nothing left for interpretation. When the act is conceived in clear and precise terms, and when the sense is manifest, and leads to nothing absurd, there can be no reason to refuse the sense which it naturally presents. To go elsewhere to obtain something to enlarge or to limit its meaning is to endeavor to elude it. The office of interpretation is not to put a sense into the language, but to ascertain the sense already existing there.

(Syllabus by the Court.)

*On Petition for Re-hearing.*

*J. W. McLoud*, for peitioner.

*Amos Green & Son*, per contra.

Opinion of the court by

McATEE, J.:  Very full and comprehensive briefs have been filed in this case upon the motion for re-hearing, ad-

dressed mainly to the proposition that the act of the legislature entitled "An act to regulate prairie fires," (Statutes 1893, p. 597, ch. 38,) which was discussed and construed in the case upon its former consideration, (preceding opinion) and is now here again for dicussion, is ambiguous; that that portion of the eighth section of the act which reads, "Any railroad company operating any line in this Territory, shall be liable for all damages sustained by fire originating from operating their road." It is argued that the act must be considered in all its length and breadth, in order to determine its intention, object, scope, and purposes, and that the court will be, ought to be, and must be aided in determining the meaning of the act by general principles of interpretation and construction which are proposed in the argument, and made the basis of the conclusion sought for; that the provision mentioned must have a limited meaning (limited not only by the title but by the other provisions of the act itself,) and that when these are all considered the conclusion must be that, inasmuch as most of the provisions of the act are intended for the protection and compensation of persons who have been injured by prairie fires set out either by negligence or without it, therefore the same meaning should be given to the clause in question; and that this court must determine, from a consideration of the whole act, that the act (the portion especially in question,) does not mean that railroad companies "shall be liable for all damages sustained by fire originating from operating their road," but that they shall be liable only for some damages sustained by fire originating from operating their road, to wit, that they shall not be liable for any other damage than that which

shall originate from setting out prairie fires "by fires. originating from operating their road."

A number of authorities are cited, both in the briefs of counsel and in the dissenting opinion filed in the cause, to the effect that "the intention of the whole act must govern;" that "the true meaning of any clause is that which best accords with the subject and general purposes of the act, in every part of it;" that the law-maker has "a definite purpose in view, and that purpose is an implied limitation on the sense of the general terms, and that the consideration must be of the entire statute;" that "the literal construction of the section ought not to prevail," and "the context ought to be considered;" and the "meaning of the words has to be adapted to the particular subject-matter with reference to the other words," and "general words are to be restricted or extended to suit the subject-matter of the act." And authorities are cited in the dissenting opinion which was filed in the case to the effect that "the mere literal construction of the section ought not to prevail, if it is opposed to the intention of the legislature apparent by the statute, and that the words of the statute should be construed with reference to the subject-matter of the enactment, and the object sought to be obtained," and that "every part of the act is to be taken into view for the purpose of discovering the mind of the legislature," etc. And it is declared in the dissenting opinion that "the interpretation of this statute requires the application of almost every rule approved for the construction of statutes," and that "a fundamental rule is that the intent of the legislature should determine."

These quotations from standard authorities which are made in the arguments of counsel, as well as in the dis-

—38

senting opinion filed in the cause, can, in themselves, not be disputed. They are accepted canons and principles of interpretation, applicable in proper cases, and to be used when it is necessary to use them in order to determine the scope and effective force of statutory legislation. But the question first arises whether they are applicable in this case, for principles of construction are out of place and pernicious if they are sought to be introduced and applied when they are not called for, and if they are sought to destroy the effect of a legislative enactment, and to warp it from the true and plain meaning of the legislature; and we believe the law to be that when the legislature has plainly and distinctly spoken and its terms are so plain and manifest that the human understanding comprehends their full meaning at a glance, and requires no aid to interpret or make it manifest, then principles of interpretation and construction are not applicable, but if aids are offered, in the way of principles of interpretation and construction which are not applicable, and which obscure and make the legislative provisions doubtful, then they are pernicious, obstruct the court instead of aiding it, and ought to be excluded from consideration. When the language of the statute is not only plain, but admits of but one meaning, the task of interpretation does not arise, and those incidental rules which are mere aids, to be invoked when the meaning is clouded, are not to be regarded. (*Telegraph Co. v. Hewett*, 2 Cent. Rep. 694.)

It has been accepted as a primary and superior principle of interpretation, since the time of Vattel, that "it is not allowable to interpret what has no need of interpretation." (2 Inst. 533.)

Such language best declares, without more, the intention of the law-giver, and is decisive of it. (*Rex v. Inhabi-*

*tants of Hodnett,* 1 Term. R. 96, [Buller, J.]; *U. S. v. Hartwell,* 6 Wall. 395; *U. S. v. Wiltberger,* 5 Wheat. 95; *Koch v. Bridges,* 45 Miss. 247.)

The legislature must be intended to mean what it has plainly expressed, and consequently there is no room for construction. (*Rex v. Inhabitants of Banbury,* 1 Adol. & E. 142; *U. S. v. Fisher,* 2 Cranch. 399; *Case v. Wildridge,* 4 Ind.51.)

It is only in the construction of statutes whose terms give rise to some ambiguity, or whose grammatical construction is doubtful, that courts can exercise the power of controlling the language in order to give effect to what they suppose to have been the real intention of the lawmakers. (*Newell v. People,* 7 N. Y. 97; *Barstow v. Smith,* Walk. Ch. 394; *Bidwell v. Whitaker,* 1 Mich. 469; *McCluskey v. Cromwell,* 11 N. Y. 593.)

And it was said in Wilberforce's Statute Law, (page 116,) that: "It has therefore been distinctly stated, from early times down to the present day, that judges are not to mold the language of statutes in order to meet an alleged convenience or an alleged equity; are not to be influenced by any notions of hardship, or of what in the'r view is right and reasonable, or is prejudicial to society; are not to alter clear words, though the legislature may not have contemplated the consequences of using them; are not to tamper with words for the purpose of giving them a construction which is 'supposed to be more consonant with justice' than their ordinary meaning."

The clear language of a statute can be neither restrained nor extended by any construction of supposed wisdom or policy. (*Hadden v. Collector,* 5 Wall. 107; *Hyatt v. Taylor,* 42 N. Y. 259; *Horton v. School Com'rs,* 43 Ala. 598; *Com. v. Shoop,* 1 Woodw. Dec. 123; *In re Powers,* 25

Vt. 265; *State v. Liedtke*, 9 Neb. 468, 4 N. W. 61; *Reynolds v. Holland*, 35 Ark. 56; *Miller v. Childress*, 2 Hump. 320.)

And it was said by Judge Story that: "The only sound principle is to declare, '*Ita lex scripta est*'—to follow and to obey; nor, if a principle so just could be overlooked, could there be well found a more unsafe guide or practice than mere policy and convenience." (Story, Const. sec. 426.)

And it was said by the supreme court of Kansas in the case of *Fitzpatrick v. Gebhart*, 7 Kan. 35, that: "The true way for courts to ascertain the legislative intention is to observe and be guided by the language of the statute, and, if this be clear and free from ambiguity, there is nothing left for intepretation; for when the act is conceived in clear and precise terms, when the sense is manifest and leads to nothing absurd, there can be no reason to refuse the sense which it naturally presents. To go elsewhere to obtain something to enlarge its meaning is to endeavor to elude it. In construing this statute, if the court should adopt the theory of the defendant below, it would assume the extraordinary power of supplying a supposed omission, or rather of injecting into the statute a new term or provision. Such is not the office of interpretation. The office of interpretation is not to put a sense into language, but to ascertain the sense already existing therein." The language of the statute is so plain that we do not see how, without doing violence to the natural reason, we can aid a determination of its meaning by supplying some other than its plain and apparent meaning by endeavoring to apply the principles of interpretation. The language of the statute intends "any railroad company" within the jurisdiction of the court shall be liable

for "all" damages sustained by fire originating from operating the road. The meaning is manifest. It does not seem to be susceptible of interpretation or construction. The principles of construction and interpretation which have been cited do not help to make the meaning clear. We do not think that any principle of constructon can be applied which shall modify the liability imposed for "all" damages by limiting it to "some" damages which shall be caused by the setting of prairie on fire. In order to make the statute mean this, the court would have to interject that limitation into the statute, so as to make the statute say, "shall be liable," not for "all damages," but for "some damages,"—for example, for such "damages as are sustained by setting out fire on the prairie, by fire originating from the operating of the road." A reconsideration of the specific terms of the act itself will show that its object was to fix a positive law upon certain classes of persons, irrespective of whether such damages had been caused by negligence or not, and that in doing so the legislature not only treated of those who without negligence set out fires upon the prairie, but also prescribed the same rule to the railroad companies as to all damages which should be caused by fires which they should set out by operating their road, irrespective of whether the railroad companies are guilty of negligence or not.

It is unnecessary to cite the various sections of the statute here. If they be examined, it will be found that they provide an absolute civil liability, regardless of negligence, for damages for setting out fires upon the prairie, and that criminal liability is also affixed for damages which are caused by such fires set out negligently, and that, while a separate section is not devoted to that pro-

vision of the statute which is now in question, the same rule is applied, and that absolute lability was intended by the legislature to be affixed upon any railroad for all damages which it caused by reason of fires set out by the operating of its road. The act might just as well be termed, and perhaps more logically and comprehensively, "An act to impose civil liability upon those who cause damages by the setting out of fire without negligence, and to fix a criminal liability upon those who set out fire by negligence." The question is plain and simple, and it must be determined by direct observation of the terms of the statute itself. We are unable to find in it the ambiguity which is sought for by the plaintiff in error, and can see no reason for reversing the action of the court taken in the case hitherto; and therefore the appeal will be dismissed, and the judgment of the court below affirmed. .

Tarsney, J., dissenting, all the other Justices concurring.