In re CAPTAIN'S ESTATE.

No. 29502. April 28, 1942.

Rehearing Denied June 30, 1942.
Application for Leave to File Second Petition for Rehearing Denied Nov. 17, 1942.

*130 P. 2d 1002.*

Frank T. McCoy, John R. Pearson, and John T. Craig, all of Pawhuska, for appellant.

A. M. Widdows, Eugene O. Monnet, J. M. Humphreys, John Ladner, and Carl H. Livingston, all of Tulsa, Charles W. Pennel, of Bartlesville, and C. H. Davis, of Oklahoma City, for appellees.

ARNOLD, J. This is an appeal from a decree of heirship entered by the district court of Tulsa county in the matter of the estate of Peter Captain, deceased, on trial de novo of the proceedings appealed from the county court.

Captain died in Tulsa county intestate, without issue, wife or parent, and his estate was duly placed in process of administration. On distribution the court determined the heirs to be certain nieces and nephews, and excluded the plaintiff in error, Josephine Wayne Pinson, who claimed to be an heir as an adopted sister of the deceased by reason of her adoption by the deceased's mother.

The district court on appeal found plaintiff in error was the legally adopted daughter of the mother as alleged, but was not entitled under the statutes to share in the estate as an heir at law of decedent, and this appeal resulted.

Appellant asserts that by reason of the adoption statutes (sections 1711, 1712, O. S. 1931, 10 O. S. A. §§ 51, 52) she stands in the same relationship to deceased as a natural sister so far as the laws of succession are concerned, and as a consequence would share in the estate in the proportion specified in subdivision 3, sec. 1617, O. S. 1931, 84 O. S. A. § 213; that is, "in equal shares to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation."

This appeal involves the construction and interpretation of the adoption statutes, supra, and related sections.

Appellant contends that the courts of this state are required, in view of sections 2 and 3, O. S. 1931, 12 O.S.A. § 2, to accord to adoption statutes a liberal construction, though she admits that these sections of the statute are in derogation of the common law; that the authorities relied on by appellees, as supporting the instant judgment, are decisions wherein the courts place strict construction on the statutes of their respective jurisdictions; that section 1712, supra, creates in law a relationship of brother and sister, as well as parent and child, and accords to an adopted child full right of inheritance as such under our law of descent and distribution, except the right to take the property expressly limited to the body or bodies of the parents by adoption and property from the lineal or collateral kindred of such parents by right of representation; that this section is plain and unambiguous and by appropriate use of language clearly expresses the intention of the Legislature to accomplish the foregoing result.

Appellees do not insist upon a strict construction, but assert that the legislative intent should be made to control; they contend that the sections of the statute above designated are clear and unambiguous and clearly set forth the intention of the Legislature to create a relationship of parent and child merely; that the Legislature thereby did not create a relationship of brother and sister; that said sections do not relate to the relationship of an adopted child and a natural child and create no right of inheritance as between such children; that said sections of the statute create only the right of an adopted child to inherit from its adoptive parents subject to the limitations therein expressed. Both parties concede that the exceptions expressed in section 1712 are not involved herein, except as they may help to interpret and construe these sections of the statute.

Appellant's position that these sections of the adoption laws of the State of Oklahoma are in derogation of the common law, but are nevertheless to be liberally construed, is well taken under sections 2 and 3, O. S. 1931, 12 O. S. A. § 2, 25 O. S. A. § 29. These sections provide that the common law, with certain limitations, shall remain in force in aid of the general statutes. The rule requiring strict construction of statutes that are in derogation of the common law is not applicable to the general statutes. The general laws of this state should be liberally construed with a view to effect their objects and to promote justice. After it has been determined what the intention of the Legislature was, if not plainly expressed, laws should be liberally construed to effect such intention. This does not mean, however, that loose construction should be indulged in to determine the intention of the Legislature. Our purpose to give effect to the intention of the Legislature and to promote justice requires that we carefully determine what the Legislature intended to accomplish. If it be determined that the Legislature intended by the adoption statutes to create not only a relationshp of parent and child, but also a relationship of brother and sister as between the natural offspring and the adopted child, then such statutes should be liberally construed to

effectuate this result. If these sections of our adoption statutes are plain, clear, explicit, and unambiguous, as both parties contend, the question of strict and liberal construction is of little consequence. Likewise, if it were the intention of the Legislature to create a status of brother and sister, we shall have no difficulty on this point of liberal or strict construction. It is clear that these sections create a status, on the part of the adopted child, that did not theretofore exist under the common law, and they are, therefore, in derogation of the common law. It is clear that the Legislature intended to effect a change in the status of the adopted child from that existing at common law. Is it to be inferred from this simple fact that the Legislature intended to confer upon an adopted child all the rights of inheritance accorded a natural child under our law of descent and distribution, and is it to be presumed that the Legislature having clearly expressed its intention to change the status of an adopted child, that it intended to make it a brother or sister of the natural offspring of its adoptive parents?

It is reasonable to infer from the simple fact that we know the Legislature intended to make a change in the status of an adopted child that it intended to make it a full child as far as the parents are concerned, but it is not reasonable to infer from this simple fact that the Legislature intended to make the adopted child a full child for all intents and purposes, including inheritance from a natural child of the adoptive parents. The subject matter under legislative consideration was parent and child, not the relationship between an adopted child and a natural child. So, this being true, the statute should be liberally construed to effectuate the changes in relationship as to inheritance between an adopted child and its adoptive parents. The rule of liberal construction, however, was never intended to extend the grant of the legislative body. Its sole purpose is to favorably construe what the legislative body said to effectuate the purpose of such legislative body, but not for the purpose of enlarging the subject matter.

Section 1711, O. S. 1931, 10 Okla. St. Ann. § 51, provides:

"A child, when adopted, may take the family name of the person adopting. After adoption the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation."

Section 1712, O. S. 1931, 10 Okla. St. Ann. § 52, reads as follows:

"A child so adopted shall be deemed, for the purposes of inheritance by such child, and his descendants and husband and wife, and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption nor property from the lineal or collateral kindred of such parents by right of representation."

Section 1713, O. S. 1931, 10 Okla. St. Ann. § 53, important herein because helpful in interpreting section 1712, reads as follows:

"The parents by adoption and their heirs shall take by descent, from any child adopted under the laws for the adoption of children, and the descendants and husband or wife, of such child, only such property as he has taken from or through the adopting parents or either of them, either by gift, bequest, devise, or descent, with the accumulations, income and profits thereof, and all laws of descent and rules of inheritance shall apply to and govern the descent of any such property, in the same manner as if the child were the natural child of such parents; but the parents by adoption and their heirs shall not inherit any property which such child may take or have taken by gift, bequest, devise or descent from his kindred by blood."

There are a number of states that have a statute identical with or very similar to our section 1711, O. S. 1931, but do not have either sections 1712 or 1713, O. S. 1931. There are also a number of states that have statutes identical with

or similar to our section 1712, but do not have a similar section to our section 1711. There is only one state that has a statute containing sections identical with or similar to our sections 1712 and 1713. This state is Illinois, but it does not have a section similar to our section 1711. Oklahoma appears to be the only state that has all three sections. The states that have only section 1711 have held that by reason thereof an adopted child will inherit from his adoptive parents, but does not inherit from the natural child of such parents. In the five states that have identical, or almost identical, sections with our section 1712, the courts thereof have held that the adopted child can only inherit from his adoptive parents and does not inherit from the natural child of such parents. They are Illinois, New Hampshire, Rhode Island, Wisconsin, and Oregon. As indicated above, Illinois is the only one with both sections 1712 and 1713. In 1890 Oklahoma adopted section 1711. Thereafter, in 1895, sections 1712 and 1713 were added. Section 1711, supra, in general terms, sets forth that: "After adoption the two shall sustain towards each other the legal relation of parent and child and have all the rights . . . of that relation." Note there are no specific words used therein relating to the subject of inheritance. Broadly and in general terms it deals with "all the rights . . . of that relation" and "legal relation of parent and child." If we had no other section dealing specifically with the subject of inheritance by an adopted child, this section would certainly be broad enough and probably specific enough to constrain us to hold, in accord with the decisions of other states construing alone a section similar to our section 1711, that this section includes the right of inheritance.

However, since section 1712 specifically deals with the right of inheritance by an adopted child, we think section 1711 relates itself only to the general relationship existing under our laws as between parent and child other than the right of inheritance. This being true, the decisions of other states that have only a section identical with or similar to our section 1711 furnish us little aid in the interpretation and construction of section 1712. Section 1712, therefore, is the only section of our statute that determines the right of inheritance of an adopted child. This question is novel in this jurisdiction and dependent upon provisions of the statute.

California, South Dakota, Wyoming, Washington, Utah, and Kansas have held, under somewhat similar sections of their statutes as our section 1711, that the right of inheritance by an adopted child from its adoptive parents exists thereunder. Some of these states, in construing much broader provisions than our section 1711, have gone further and held that the right of the adopted child to inherit from the kindred of the adoptive parents also exists. The contention of the appellant in the case at bar is based on the reasoning that we would construe our section 1711 in conformity with the construction placed on the somewhat similar sections by the foregoing courts. For the reasons hereinbefore set forth and the further fact that similar sections of the foregoing states, with the exception of Utah and South Dakota, materially differ and are broader as respects the right of the adopted child to inherit, and the further fact that none of these states have sections similar to our sections 1712 and 1713, it is not necessary to review the decisions from such states.

Stripped of words not applicable herein, the more important section 1712 reads as follows:

"A child so adopted shall be deemed, for the purposes of inheritance by such child . . . the child of the parents by adoption the same as if he had been born to them in lawful wedlock, . . . ."

The two exceptions contained in this section are not applicable to the case at bar, except that they are helpful in making a proper construction of the statute. These exceptions deny the child the right to take (1) property expressly limited to the body of the adoptive parents, and (2) property from lineal or collateral kindred of such parents by right of representation. The property herein

involved is not that of the adoptive parents and appellant does not seek to take by right of representation but in her own right as an adopted sister of decedent.

Appellant concedes that the "right of representation" referred to in said exception is the "right of representation" defined in section 1632, O. S. 1931, 84 Okla. St. Ann. § 228, and in this connection contends that under the construction contended for by appellees, that is, that the adopted child, under section 1712, does not become a brother or sister, such adopted child would have no "right of representation"; that under such a construction the Legislature would be put in the position of having eliminated a right which never existed; that unless said section be construed to create a brother and sister relation, then this exception would be meaningless; that the inclusion of this exception is positively indicative of the intention of the Legislature to create not only a parent and child relationship, but a brother and sister relationship as well. The position taken by the appellant that the provision in section 1712 denying the adopted child the right to inherit from the lineal or collateral kindred of the adoptive parents by right of representation constitutes implied legislative authority for such child to inherit directly in his own right as a natural child from such lineal or collateral kindred is untenable. This section deals exclusively with the personal rights and duties existing between the adopted child and the adoptive parents. It grants full inheritance rights to the child so far as the property of the parents is concerned, but denies the child the right to take property limited to their bodies and the right to participate as the parents' representative in any of the estates of their kindred by blood, thus evincing a legislative intent and purpose to keep the property of the family, other than that of the adoptive parents, in the family, and away from the adopted child. Nowhere is there an express provision that the child shall inherit from anyone other than the adoptive parents.

Since this section refers to the adopted person as a "child" and section 27, O. S. 1931, 25 Okla. St. Ann. § 7, states that, "The term children includes children by birth and by adoption," it is apparent that said section was intended to negative the possible right of the child to inherit from the kindred of the adoptive parents "by right of representation."

Conceding for the sake of argument that under our view as to the construction of section 1712 there would be no "right of representation," it is obvious that there might be confusion and extended litigation on the question. This has been fully demonstrated by legal history. The obvious intention of the Legislature to include this exception for the purpose of eliminating anticipated confusion and litigation is explanation enough for its inclusion. Certainly it does not necessarily follow that its redundancy as to the extent of the right of inheritance indicates unmistakably the intention of the Legislature to create a brother and sister relationship and thereby extend the grant of an adopted child to take from its adoptive parents. The exceptions designated and applicable to the grant intended by the Legislature by their inclusion exclude any and all other exceptions. If one or both of the exceptions have no application, they simply become ineffective and redundant.

We held in Jacobs v. Duncan, 75 Okla. 71, 181 P. 936, that the right of inheritance was not necessarily incident to the relationship of parent and child; that without specific statutory enactment providing right of inheritance, an adopted child did not inherit; and that "the enactment itself must be looked to to ascertain the right of the parties to inherit." So, in the instant case, the right to inherit, the extent of the right, and the parties affected must be clearly set forth.

The plain intent of section 1712 was to counterbalance the inheritance rights of the child with the rights of the parents as expressed in section 1713 with reference to the source of property to be inherited.

Under section 1713 the adoptive parents and their heirs are limited to such property as such child has taken from or through the adoptive parents or either of them. Thereunder the natural child is prohibited from inheriting any property from the adopted child which it may have received from its own blood kin or accumulated by its own efforts. If the interpretation contended for by appellant is correct, the adopted child has a greater right of inheritance than the natural child. He not only inherits from the adoptive parents, but also inherits from his kindred by blood. Surely it cannot be said that the Legislature intended such a result in the face of the fact that it saw fit to make no such express provision.

The State of Illinois is the only state other than Oklahoma that has sections identical with or similar to our sections 1712 and 1713.

In Keegan v. Geraghty, 101 Ill. 26, decided in 1881, construing a statute identical with our section 1712, the Illinois Supreme Court said:

"Our statute of adoption provides that the child adopted shall be deemed, for the purpose of inheritance by such child, the child of the parents by adoption, etc., 'For the purpose of inheritance by such child,'—from whom? The statute does not say, but we say, from the adoptive parents."

Since that time Illinois has never deviated from this holding.

Though the Legislature has the power to and might make the right of inheritance as between adoptive parents and the adopted child very dissimilar, this is not to be expected nor does it ordinarily occur in the history of legislative enactment on the subject. The right to inherit from each other is generally reciprocal and equivalent. Concerning the value and significance of such a section as our section 1713, in determining the intention of the Legislature, the Illinois court, in the case, supra, aptly said:

"The right to inherit from the child which is given to the adoptive parents by section 6 (our section 1713) is very limited, being confined to such property as the child got from the adoptive parents; and there is, besides, an express prohibition against such parents inheriting any property which the child got from his kindred by blood. Mutuality would dictate that if the parents do not inherit from the adopted child's kindred by blood, neither should the child inherit from the adoptive parents' kindred."

In other words, ordinarily it is a poor rule that won't work both ways.

The Kansas court, in construing its statute that gave to an adopted child "the same rights of person and property as children or heirs at law of the person thus adopting them," held that the right to inherit as between the adoptive parents and adopted child was reciprocal and equivalent. In re Riemann's Estate, 124 Kan. 539, 262 P. 16.

As to the importance placed upon consanguinity in the matter of inheritance, see Meads v. Human, 84 Okla. 82, 202 P. 797, In re Long's Estate, 180 Okla. 28, 67 P. 2d 41, and sections 1617 (2), (6), 1619, 1713, O. S. 1931.

The Wisconsin court, In re Bradley's Estate, 185 Wis. 393, 201 N. W. 973, appropriately said in this connection "to prescribe a course of descent which will take the property of the deceased person out of the current of his blood, . . . the Legislature should use explicit and unmistakable language."

It was said in Hockaday v. Lynn, 200 Mo. 456, 98 S. W. 585:

"Consanguinity is so fundamental in statutes of descent and distribution that it may only be ignored by construction when courts are forced so to do either by the terms of express statute or by inexorable implication."

The Supreme Courts of New Hampshire, Rhode Island, Wisconsin, and Oregon construed a statute similar to our section 1712 in accordance with the Illinois rule. We have been unable to find any construction contrary to the Illinois interpretation of a statute similar to this section. We have been cited

to none and assume there are no contrary holdings. In this connection, however, it is contended by the appellant that the strict construction rule maintains in all of the states above referred to. For the reasons hereinbefore stated, we do not think this sufficient reason to render the holdings and reasonings of these cases inapplicable. Nor is the fact that none of these states have a section similar to our section 1711, and some of them do not have one similar to our section 1713, sufficient reason for us to deviate from the rule therein announced.

It must, of course, be conceded that the matter of adoption and the nature and extent of the right of inheritance resulting therefrom are wholly within the control of the Legislature. If it sees fit, it can accomplish by appropriate legislation the end sought and contended for by either appellant or appellees, and the fact that we thought its enactment in the instant case constitutes unwise legislation would make no difference; the question would still be, "What did the Legislature do, or intend to do, in case its intention is not clearly expressed?" The fact that the statute abrogated the common law or went further than any other legislative body has gone to the present time, or that it created a very great advantage in favor of the adopted child and completely overturned legislative custom and ignored the apparent efficacy and importance of consanguinity in the manner of inheritance, we would still have the same question— "What did the Legislature intend to do?" However, such an intention to deviate from the common law, legislative practice, reciprocal relationship, and blood relationship should be clearly expressed, not left to implication or inference. At the same time that our section 1711 was adopted we also adopted section 1619, O. S. 1931, 84 O. S. A. § 215, with reference to inheritance by illegitimate children. It is helpful in determining the all-important question— what was the intention of the Legislature when it adopted our section 1712— to note with reference to the illegitimate children statute, supra, that the Legislature was very specific as to its intention. Keep in mind that illegitimate children are of the same blood as the parents, but at common law and under our general statutes of descent and distribution were not heirs. Unmistakably, the Legislature meant, as in the instant case with reference to an adopted child, to change their status so that they could inherit to some extent and from somebody. Note the use of the words and expressions used by our Legislature to designate the extent of inheritance and from whom.

"Every illegitimate child is an *heir* of the person who in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child; and in all cases is an *heir of his mother; and inherits his or her estate,* in whole or in part, as the case may be, *in the same manner as if he had been born in lawful wedlock;* but he does not represent his father or mother by inheriting any part of the estate of his or her kindred, either lineal or collateral, unless before his death his parents shall have intermarried, and his father after such marriage, acknowledges him as his child, or adopts him into his family; in which case *such child and all the legitimate children are considered brothers and sisters and on the death of either of them, intestate, and without issue, the others inherit his estate, and are heirs, as hereinbefore provided, in like manner as if all the children had been legitimate; saving to the father and mother respectively, their rights in the estate of all the children in like manner as if all had been legitimate.*" (Emphasis supplied.)

Is not the attitude of the Legislature, to be very specific and explicit in describing the nature and extent of the inheritance of the rights of those who at common law were not heirs, very obvious from the casual reading of the illegitimate child statute? Indulging to the fullest extent the rule of liberal construction, if at all applicable to a determination of the intention of the Legislature, in a sincere effort to determine the nature and extent of the grant of heirship by our section 1712, can it possibly be said that the Legislature ever intended that such grant should be based

upon implication and inference? No implication or inference need be indulged to determine the intention of the Legislature in the adoption of the illegitimate child statute, and implication and inference should not be resorted to in an effort to extend the express grant of section 1712.

We are convinced, and therefore hold, that, construing our sections 1711, 1712, and 1713 together, our Legislature did not intend to provide that an adopted child should inherit from the natural child of its adoptive parents; that there would have to be an expressed provision therefor and none exists; that the Legislature intended to and did by said sections provide only for inheritance by an adopted child from its adoptive parents subject to the restrictions set forth in said section 1712.

In view of our holding on the foregoing proposition, it is not necessary to discuss the other contention made by appellees.

Judgment affirmed.

WELCH, C, J., CORN, V. C. J., and BAYLESS, GIBSON, and HURST, JJ., concur. RILEY and OSBORN, JJ., dissent. DAVISON, J., absent.

---

RILEY, J. (dissenting.) By the rule of the majority opinion an adopted child has no right of inheritance from the estate of a deceased adoptive brother or sister, but in the absence of an heir the estate of such a brother or sister escheats to the state. Such a construction in this enlightened age, to me, is unthinkable, contrary to the meaning of words used in related statutes, and unjust. By it, if in years to come, in the natural course of events, my child should outlive my other heirs, should my sister's adopted child do likewise as to her heirs, and should my child predecease my sister's child, none of my property or my child's property would go to my sister's child, but in the absence of an heir the estate would be forfeited.

Section 1711, O. S.' 1931, 10 O. S. 1941 § 51, provides:

". . . a child . . . after adoption . . . shall sustain . . . the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation."

Section 1713, O. S. 1931, 10 O. S. 1941 § 53, in part, provides:

". . . all laws of descent and rules of inheritance shall apply to and govern the descent of any such property (that descending from an adopted child) in the same manner as if the child were the natural child of such parents, . . ." —limited, however, so that the inheritance from such an adopted child may not include that which comes to the adopted child from kindred of the blood.

The limitation imposed does give some advantage to the estate of an adopted and so underprivileged person. That advantage, however, is exactly offset by the limitation contained in section 1712, O. S. 1931, 10 O. S. 1941 § 52:

". . . that he (the adopted child) shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption nor property from lineal or collateral kindred of such parents by right of representation."

The majority view is based upon a construction of the provision contained in section 1712, O. S. 1931, 10 O. S. 1941 § 52, that:

"A child so adopted shall be deemed, for the purposes of inheritance by such child, * * * the child of the parents by adoption the same as if he had been born to them in lawful wedlock. . . ."

By asterisks, first employed, I have omitted the phrases "and his descendants and husband or wife, and other legal consequences and incidents of the natural relation of parents and children, . . ." The omission is not by reason of unimportance, but the particular significance of the words "legal consequences and incidents of the natural relation of parents and children."

The import of those words ought to be decisive here, for they are indicative of the legal relation of natural children, and that is the right of inheritance not only as between parent and child, but

as well among children of the same family. The basic state.

My opinion could well rest upon the preceding statement, but for adverse construction of the first part of the preceding section of our statute originating in the State of Illinois in the case of Keegan v. Geraghty, 101 Ill. 26, decided in the year 1881, and followed in New Hampshire, Rhode Island, Wisconsin, and Oregon.

We have no legislative history of adoption of statutes from the State of Illinois, but we may well presume that section 1712 was adopted from that jurisdiction, and the "violent" presumption may be based upon the stated presumption that our Legislature adopted the statute in view of the adverse construction placed upon it in the state of its origin.

Withal, such presumptions are mere rules of construction intended to guide the lamp of reason. Principles of construction are out of place and pernicious if they are sought to be introduced and applied when they are not called for, and if they are sought to destroy the effect of a legislative enactment, and to warp it from the true and plain meaning of the Legislature. Choctaw, Oklahoma & Gulf R. R. Co. v. Alexander, 7 Okla. 591, 54 P. 421. This court, in trial and error fashion, requisite to jurisprudence of a comparatively new state, has never hesitated to overrule decisions of its own creation, so a fortiori why should it now make the mistakes of others and of yesteryear the law of today? It is only by departure from the rule that clear language employed in a statute cannot be restrained or extended by any construction and meek submission to spoken words—empty of wisdom and contrary to public policy enjoined upon us by law (secs. 2, 3, O. S. 1931) —that a majority of this court can follow the decisions urged upon us.

As indicated in Alexander et al. v. Samuels, 177 Okla. 323, 58 P. 2d 878, there are jurisdictions in American jurisprudence where statutes of adoption are treated as being in derogation of the common law, and consequently strictly construed so that the rights of adopted children are sharply limited. But ours is a jurisdiction not so fettered with legal lore. Chicago, R. I. & P. Ry. Co. v. Groves, 20 Okla. 101, 93 P. 755, 22 L. R. A. (N. S.) 802.

The common law, while consistent with the best scholastic thought of the period, nevertheless was developed by the same minds that indulged witchcraft, enchantment, and sorcery as institutions of the "myriads who, before us, passed the door of darkness through." To the jurist of succeeding ages that come and go upon "this chequerboard of night and days" it was thought that we might well depart in our distributive system of justice from some of the harsh and even ridiculous doctrines of the middle ages. Garrison v. Territory of Oklahoma, 13 Okla. 690, 76 P. 182. And so our courts have adopted a liberal attitude to give effect to the spirit and meaning of statutes, for, while by virtue of sections 2 and 3, O. S. 1931, 12 O. S. 1941 § 2, and 25 O. S. 1941 § 29, respectively, the common law of England as modified remains in force within the State of Oklahoma, in aid of statutes, the rule of strict construction, elsewhere applied to such statutes, does not obtain in this jurisdiction, but all such statutes shall be liberally construed to promote their object and justice. Green et al. v. Wilson et al., 112 Okla. 228, 240 P. 1051.

The Supreme Court of Kansas, a state of the Golden West, a part of the old cattle country, and one not hidebound with traditions, says of a similar statute that an adopted child has " . . . the same rights of person and property as children or heirs at law of the person thus adopting them"; that the right of inheritance enjoyed by an adopted child is identical with that of a natural child. That eminent tribunal would not, it said, follow "peculiar discriminations" displaying "the hostile attitude of the common law toward the whole subject of legitimation and adoption of children," for that theory indulged by foreign decisions upon the subject was at variance with a general spirit of local law.

I maintain that the language of section 1712, supra, to the effect that:

"A child so adopted shall be deemed for the purpose of inheritance by such child . . . the child of the parents by adoption the same as if he had been born to them in lawful wedlock"

—is plain, simple, broad, comprehensive, and unambiguous. So thought the court of Wyoming in regard to their statute upon the subject. In re Cadwell's Estate, 26 Wyo. 412, 186 P. 499.

If that be so, resort will not be had to rules of construction, neither shall we care as to that which others say as to their statute, though it be identical with ours, where theirs is measured by rigorous adherence to common law. For "where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself." In re Martin's Estate, 183 Okla. 177, 80 P. 2d 561.

We are well aware of the fact that a natural child has no more to say about who natural brothers and sisters are to be, nor the number of them, than about adopted brothers or sisters, but the law speaks upon the subject of devolution of all property. If one does not wish to be governed by the law, resort may be had by a person sui juris to the simple expediency of making a will, in the absence of which an innocent and under-privileged child, by reason of adoption, by law, will be elevated to the rank and dignity of an issue of the body. The phrase "for the purpose of inheritance" is all inclusive. The unlimited inheritance provided by law for the child is "a general sweeping omnibus provision" of inheritance. In re Cadwell's Estate, supra. It simply means that the adopted child may inherit from everybody within the contemplation of heirs, without exception, other than as heretofore noted and limited to estates in their nature ancestral.

The judgment of the lower court rested upon the decision of Keegan v. Geraghty, 101 Ill. 26, a decision construing a statute identical with our section 1712, supra, but a statute unaided by kindred statutes such as that provided by section 1711, supra, and within a jurisdiction where statutes in lieu of common law were considered in derogation of those rules rather than in aid of them.

The reasoning of the Illinois court injected into the statute the query—"For the purpose of inheritance by such child —*from whom?*"

The scales of justice in that cause were shattered for a moment by the observation that "the statute does not say" and then the bleak corpse of the common law appeared to the minds of those jurists and by the words they used, decisive of the issue, there was demonstrated the clearest example of constitutionally inhibited judicial legislation (sec. 1, art. 4, Const.) that has come to my attention in a score of years upon the bench: "The statute does not say, but we say, from the adoptive parents."

Redundancy of that judicial legislation is exhibited by the second exception in the statute contained; it excludes the adopted child's inheritance "by right of representation." That court concluded that the language of this exception was negative and restrictive so as not to grant, affirmatively, a right of inheritance to the child. But since that language is restrictive, of necessity it limited that affirmatively, broadly, and previously granted. Moreover, that which was so previously granted was the adopted child's all-inclusive right of inheritance. "For the purpose of inheritance by such child."

The language employed by the phrase previously used granted all the right designated. When subsequently an exception or limitation was employed by the statute, it excluded all other exceptions not stated. Expressum facit cessare tacitum.

The Supreme Court of Illinois, by that decision, convicted the Legislature of an absurdity, for if the adopted child's inheritance was limited to that from the adoptive parents, as the court decided, there was no need in that state

for the statute construed. That court, in reference to the revision of the Illinois statute of 1874, said it was not clear that the Legislature intended to make "such an important and uncalled for change in our law." Doubtless the Legislature thought its effort important, for by the old law the adopted child, as to the adoptive parents, was "capable of inheriting his or her estate." Why, at public expense, would Solons "thrash old straw"? But whether the attempt was "uncalled for" at first would seem to be a matter addressed to legislative discretion. "The wisdom or want of wisdom displayed in the act is not a question for the courts, nor are the motives of the Legislature in including or omitting certain provisions." 59 C. J. 945; Peak v. Reed, 24 F. 2d 619.

In conclusion, I respectfully suggest that a foreign decision, so palpably illogical, unsound, and contrary to principles of justice, adverse to the genius of a free people as expressed in law, denoting departure from unequal privileges of the common law, would not influence my decision in this cause so likely to establish a harsh rule effecting the devolution of property of an enlightened citizenship.

Will it be said in future, under the rule of law promulgated by the majority, limiting an adopted child's right of inheritance to the estate of adoptive parents, in this modern age when children are acquired by the intelligentsia under a comparatively new method, that adoptive brothers and sisters may not inherit from each other with whom they have experienced life from the cradle to the grave? I would not so say.

OSBORN, J., concurs.