In the Matter of the ESTATE of Nancy WARE, Deceased.

Billie Joe Young Fletcher ROGERS, Plaintiff in Error,

v.

Nancy Rogers RECTOR, Individually, and as Administratrix of the Estate of Nancy Ware, Deceased, Defendants in Error.

No. 37784.

Supreme Court of Oklahoma.

Nov. 5, 1958.

Rehearing Denied Dec. 1, 1959.

Second Petition for Rehearing Denied Jan. 12, 1960.

Shoemake & Briggs, Pawhuska, Gordon L. Patten, Tulsa, for plaintiff in error.

F. W. Files, Pawhuska, for defendants in error.

BLACKBIRD, Justice.

This appeal involves a determination of the proper devolution of one-half of the 1⅔ Osage Indian headrights owned, at the time of her death, by one Nancy Ware, who was enrolled opposite Roll No. 1808, and received an allotment, as a member of the Osage Tribe of Indians. Said allottee died in January, 1933, while a resident of Osage County, and leaving a will executed during the same month of the previous year, but not approved in the Office of the Secretary of the Interior until June 27, 1933.

Under the terms of said will, and the decree of the county court entered June 11, 1934, in the proceedings to admit same to probate, the testatrix' grandchildren, Nancy Rogers Big Elk and Thomas Rogers, were paid the income from said Osage headrights in proportions of one-half to each, until the death of the latter in December, 1953, which necessitated a determination as to what disposition was to be made, in accordance with testatrix' will, of that portion of the headrights from which he had been receiving income. The matter was rendered controversial by the fact that, in 1942, the said Thomas Rogers had adopted, as his son, Billie Joe Young Fletcher Rogers, the son (by a former marriage) of his wife, Grace, whom he married in 1937, more than four years after the testatrix' death.

The portion of the testatrix' will governing the devolution of the headrights involved herein is paragraph "III", which reads as follows:

"I hereby give, devise and bequeath the income from the Osage headrights or shares in the mineral interests of the Osage Tribe of Indians owned by me at the time of my death to my two grandchildren, Thos. Rogers and Nancy Rogers Big Elk, during their lives; provided that each of said grandchildren shall receive one half of said income at the time the distribution of said income is payable: and provided further that if either of said grandchildren shall die leaving no surviving child or children then said entire income shall be paid to the surviving grandchild during the life of the said survivor: and provided further that if said grandchildren or either of them should die leaving a child or children surviving them said mineral interests

or headrights from which said deceased grandchild or either of them was receiving the income shall immediately vest in said child or children, share and share alike, and in the child or children of any deceased child of my said grandchildren by right of representation: and provided further that if both of said grandchildren shall die without children then said headright shall vest in the heirs of my body, or, in case of the death of any of the heirs of my body, then to the living issue of such deceased heirs by right of representation."

After her appointment, in 1956, as administratrix with the will annexed of the estate of the testatrix, her deceased grandmother, Nancy Rogers, now Rector, who is one and the same as "Nancy Rogers Big Elk" and is the "surviving grandchild" within the nomenclature of the above quoted will, filed in the probate proceedings pertaining to said estate, a pleading entitled: "Final Account, Petition To Construe Will of Deceased and Judicially Determine the Death of Thos. Rogers, also known as 'Thomas L. Rogers, Jr.,' and For a Decree of Distribution."

At the hearing held on said pleading in the county court, the pivotal question was: Whether Billie Joe Young Fletcher Rogers, being an adopted, rather than a natural, child of the testatrix' deceased grandchild, Thomas Rogers, was a "child" of a grandchild of the testatrix within the meaning of that term, and equivalent expressions, if any, used in the above quoted third paragraph of her will.

The county court determined the question against the adopted boy, Billie Rogers, and decreed that the income from the headright interest (including that which had accrued since the death of Thomas Rogers) "be paid to Nancy Rogers Rector during her lifetime." Upon appeal to, and trial de novo by, the district court, herein referred to as the trial court, said court entered a judgment, in accordance with findings of fact and conclusions of law,

which, in every material respect, concurred with the county court's decree. Thereafter, Billie Rogers, hereinafter referred to as appellant, perfected the present appeal to this court. Nancy Rogers Rector appearing here in her capacity as an individual, as well as administratrix, will be hereinafter referred to as appellee.

In his argument for reversal, the appellant attacks both the trial court's findings of fact and conclusions of law, but treats particularly of said court's first three conclusions of law, which were in words and figures as follows:

"1. That the adoption of a child under the Oklahoma law only fixes the status of such adopted child insofar as his adoptive parent is concerned and confers upon such adopted child only the legal consequence of the adopted child for the purpose of inheritance or other rights of such child from his adoptive parent.

"2. That under the law of Oklahoma the right of an adopted child to succeed to property of kindred of the adoptive parent, the claimant, under Title 10 O.S.A. [§§] 51 and 52, is expressly excluded from taking property limited to the body, or bodies, of the parent by adoption and from lineal or collateral kindred of such adoptive parent by right of representation.

"3. That title 25 O.S.A., Section 7, has been construed by the Supreme Court of the State of Oklahoma in the case of In re Captain's Estate, in which the Court said:

"'Since this section refers to the adopted person as a "child" and Section 27, O.S.1931, 25 Okl.St.Ann. Sec. 7, states that, "the term children includes children by birth and by adoption", it is apparent that said section was intended to negative the possible right of the child to inherit from the kindred of the adoptive parents "by right of representation".'"

Appellant attributes the claimed errors in the trial court's judgment to his failure to

recognize that the case of In re Captain's Estate, 191 Okl. 463, 130 P.2d 1002, (which so obviously influenced said judgment) dealt with an intestacy situation where statutes are usually the final arbiter of the descent and distribution, rather than a testacy situation like the present one, where the intention of the testator governs. Pursuing this premise, appellant attempts (without evidence of the testatrix' intention, other than the words of the will itself) to show that by omitting to preface the terms "child" and "children" with the word "natural" in her will, the testatrix understood said terms as including adopted children (by statute) in Oklahoma, and that her use of other terms such as "living issue" and "heirs of my body" (which appellant concedes do not include adopted children) shows that she recognized the distinction between such terms.

■■■ Generally speaking, of course, statutes do not govern, or even influence, the matter of who may be beneficiaries of estates under wills, as they do the matter of who shall be beneficiaries of estates in intestate succession. Accordingly, a testator or testatrix may, by will, include among the beneficiaries of his or her estate, persons who have neither a natural nor legal claim thereon; and, when such intention is clear, it matters not that such persons would have no claim to any part of the estate under the laws of succession or descent and distribution. It is only where the words of the will leave the testator's intention in doubt, that such statutes, or those that restrict the devolution of such estates, or those bearing upon the relationship of persons such as the testatrix and the claimant, may be entitled to consideration. But, said statutes are considered—not because they control the devolution of the estate directly—but because they may furnish a clue to arriving at the testator's intention, in view of the presumption, usually indulged, that he was cognizant of their existence and efficacy, when the will was drafted and executed. Thus, it is only to the extent that such statutes, federal

and state, are applicable to appellant's relationship to the testatrix, or to the devolution of her estate, that they may constitute any foundation, in reason or logic, for his contention that the word "child", as used in the testatrix' will, includes him. And, in determining such statutes' applicability, we may look to cases involving intestate estates, as well as those involving testate estates, where the statutory construction there announced is a general one and does not hinge upon testacy or intestacy. Clearly, In re Captain's Estate, supra, is such a case. In our opinion in that case we said (at page 1005 of 130 P.2d) that Tit. 10, O.S.1951, sec. 51 (O.S.1931, sec. 1711) "relates itself only to the general relationship * * * between parent and child (and) other than the right of inheritance." Following this statement in that opinion, we demonstrated why decisions from other jurisdictions upholding an adopted child's right to inherit from kindred of his adoptive parents, are neither controlling nor persuasive. We there noted in sec. 52, (O.S.1931, sec. 1712) of the same Title, reference to the word "child", which, under Tit. 25, O.S.1951, sec. 7, may mean an adopted child, as well as a natural child, but concluded that "said section (52) was intended to negative the possible right of the child to inherit from the kindred of the adoptive parents 'by right of representation'." In reaching this conclusion we there said (at page 1006 of 130 P.2d):

"The position taken by the appellant that the provision in Section 1712 denying the adopted child the right to inherit from the lineal or collateral kindred of the adoptive parents by right of representation constitutes implied legislative authority for such child to inherit directly in his own right as a natural child from such lineal or collateral kindred, is untenable. This section deals exclusively with the personal rights and duties existing between the adopted child and the adoptive parents. It grants full inheritance rights to the child so far

**180**

*as the property of the parents is concerned, but denies the child the right to take property limited to their bodies and the right to participate as the parents' representative in any of the estates of their kindred by blood,* thus evincing a legislative intent and purpose to *keep the property of the family,* other than that of the adoptive parents, *in the family, and away from the adopted child.* Nowhere is there an express provision that the child shall inherit from any one other than the adoptive parents." (Emphasis ours).

Here, if there were any doubt from the provisions of paragraph III of the will as a whole, including those containing the terms "heirs of my body" and "right of representation", that it was the intention of the testatrix to keep the devolution of her headrights in her own blood line, we think it is readily dispelled upon consideration of the inheritance restrictions placed by Congress upon such interests in Osage tribal property. In this connection, see the Act of Congress of June 28, 1906 (34 Stat. 539), as amended by the Act of Congress of March 3, 1921 (41 Stat. 1249–1251), the Act of Congress of April 18, 1912 (37 Stat. 86–88) cited in the Secretary of the Interior's endorsed approval on the will in question, as authority therefor; and, more particularly Section 7 of the Act of Congress of February 27, 1925 (43 Stat. 1008–11), as amended by the Act of Congress of September 1, 1950 (64 Stat. 572) dealt with in Ware v. Beach, Okl., 322 P.2d 635. The ultimate purpose of the last two Congressional Acts was to prevent heirs, except those of Indian blood, from inheriting from persons having one-half or more Indian blood of the Osage Tribe of Indians "any right, title, or interest to any restricted lands, moneys, or mineral interests of the Osage Tribe; * * *". Upon inquiry by this court, counsel say that there is no question of federal inheritance restrictions in this case. Assuming, without deciding, that Billie Rogers meets the qualifications imposed by Congress on the inheritance of Osage Indian headrights, the question then arises: How could those who drafted and executed the will in question be certain that any child the testatrix' grandchild might *adopt* would meet such qualifications? Therefore, is it not reasonable to assume that in making testamentary disposition of such restricted Indian property it would be done in such manner as to leave no question as to its efficacy? And, would not keeping headrights in the testatrix' blood line be the best way of being certain that said property would be inherited by heirs who could establish Indian blood (under the Federal Acts, supra) by their enrollment record or by the enrollment record of a lineal Indian ancestor? We think all of these questions must be answered in the affirmative, and, in view of the presumption that the testatrix knew of the inheritance restrictions on such property, such answers furnish substantial insight as to what she intended in her will's reference to a child or children of a grandchild or grandchildren. Upon consideration of the foregoing, and, in the absence of any evidence to the contrary, it can only be concluded that such references were intended to exclude adopted children. It therefore follows, that the judgment of the trial court must be, and is hereby affirmed.

CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS and CARLILE, JJ., concur.

WELCH, C. J., and JACKSON, J., dissent.