Jimmy Neal TERRY, Appellant,

v.

Gore EDGIN dba Gore Edgin Construction Company, the City of Norman, Oklahoma, a municipal corporation, and, Cleveland County, Oklahoma, acting by and through its Board of County Commissioners, Appellees.

No. 50215.

Supreme Court of Oklahoma.

July 24, 1979.

Wayne Wells, Lampkin, Wolfe, Burger, McCaffrey & Norman, Oklahoma City, for appellant.

Robert L. Bailey, Asst. Dist. Atty., Cleveland County, for appellees.

SIMMS, Justice:

This litigation comes before us on appeal a second time. A recitation of the essential facts is found in *Terry v. Edgin, Okl., 561 P.2d 60 (1977)* where this Court passed on the issue of the correctness of a trial court's sustention of the City's motion for summary judgment. We held the trial court to be incorrect in granting summary relief to the City.

In the appeal now before us, appellant attacks the sustaining of a demurrer to his amended petition and dismissal of his cause of action against the county, the dismissal being predicated upon the County's immunity from liability in tort.

The question is squarely put. Does the doctrine of sovereign immunity unconditionally cloak a county in Oklahoma with absolute immunity from liability arising from the alleged tortious conduct of its officers and employees, committed in the scope of their official duties?

We hold it does not.

Appellant asserts that the trial court erred in ruling that Oklahoma law holds counties immune even when engaged in purely proprietary functions. Furthermore, appellant urges this Court to rule that liability for maintenance of public roadways should be the same for counties as it is for corporate municipalities.

Responding, the county claims that it stands immune from tort liability regardless of the function performed. County also claims that county road maintenance has already been ruled governmental in nature by this Court.

Because the accident and injuries herein complained of occurred prior to the enactment of the "Political Subdivision Tort Claims Act", 51 O.S.Supp.1978, § 151, et seq., the "Act" has no application to this case.

We first consider whether a county is completely immune from suit.

Many jurisdictions in recent years have re-evaluated their commitment to the common law doctrine of sovereign immunity. Often these re-evaluations are accompanied by substantial changes in the law. Appellant has called our attention to certain of these changes and urges that we follow the trend.

We are not unmindful of, nor do we necessarily disagree with, the able arguments of courts and commentators in other jurisdictions. However, this Court has remained steadfast in its dedication to the principal that, wherever possible, the solution to Oklahoma's legal problems are to be found in our Constitution and statutes. If our own law was silent on a particular subject, we might be free to "follow the trend" but we are convinced that our legislature has provided sufficient guidance for solving the issue now before us.

At common law, counties could neither sue nor be sued. Most authorities are in agreement that county immunity became settled common law doctrine in the English case of *Russell v. Men of Devon, 2 T.R. 667, 100 Eng.Rep. 359 (1788)*. The *Russell* court disallowed the suit absent statutes authorizing actions against counties.[1]

The Supreme Court of Oklahoma, in territorial days, announced the *Russell* doctrine in *James v. Trustees of Wellston Township, 18 Okl. 56, 90 P. 100, 13 L.R.A., N.S. 1219 (1907)*. The syllabus of the *James* court stated:

"In the absence of express statute imposing a liability on townships for injuries sustained from defects in highways, such townships, in this territory, are not liable in a civil action for damages for neglect of public duty in failing to keep the highways in a safe and proper condition."

The quoted syllabus is an accurate statement of the common law rule.[2] Unfortunately, the import of *James* was missed in frequent repetition. Clearly, the Constitution and statutes are to guide the courts concerning the status of the common law immunity doctrine in Oklahoma. Resort to jurisdictions operating under statutes substantially different from our own may have resulted in improvident results.

Our attention is called to the frequently cited Oklahoma case of *Hazlett v. Board of Commissioners of Muskogee County, 168 Okl. 290, 32 P.2d 940 (1934)*. There, plaintiff was injured by a negligently driven county truck and badly burned when water from the truck's ruptured radiator spilled over her. She urged the Court consider Oklahoma's Bill of Rights, Article II, § 6, which declares that there shall be a remedy afforded for every wrong. This Court strictly construed the Constitution and found that this Constitutional provision "does not purport to provide a right of action *ex delecto* against the county." In affirming the sustaining of a demurrer and dismissal as to the Board of County Commissioners, *Hazlett* relied upon the Oregon case of *Templeton v. Linn County, 22 Or. 313, 29 P. 795 (1892)*. The Oregon code expressly provided that suits *could be maintained against counties on contracts and not otherwise*. There is not now nor has there ever been an analogous Oklahoma statute. Although plaintiff in *Hazlett* did urge Oklahoma statutes in support of her right to maintain an action against the county, the court dismissed the statutes without analysis by simply stating that they "have been in force in this state since statehood and were likewise in force in the territory of Oklahoma from 1890 to statehood, and doubtless have often been considered in connection with actions against counties and townships." *Hazlett, supra, 32 P.2d at page 943*.

---

**1.** For discussion, see: 61 N.W.U.L. Rev. 237, Vanlandingham, *"Local Governmental Immunity ReExamined"* (1966).

**2.** Though this case involved a township, this Court subsequently applied the same rule to counties, e. g., *Board of Commissioners of Harmon County v. Keen, 194 Okl. 593, 153 P.2d 483 (1944); Hazlett v. Board of Commissioners of Muskogee County, et al., 168 Okl. 290, 32 P.2d 940 (1934)*.

On reflection, it appears that the Court's cursory treatment of the Oklahoma Constitution and applicable statutes, together with misplaced reliance on inapplicable authority, renders *Hazlett* of questionable value on the issue of governmental immunity as applied to counties.

Following *Hazlett,* members of the Oklahoma Bar have diligently searched the statutes for language which might affect an implied waiver of governmental immunity. These efforts have routinely ended in failure. In *Board of Commissioners of Harmon County v. Keen, 194 Okl. 593, 153 P.2d 483 (1944),* an injured county employee attempted to sue the county on the authority of the Workmen's Compensation Act, 85 O.S.1941, § 3(3). Writ of Prohibition was issued against the trial of the case on the theory that the cited statute did not change the common law relative to county liability. Factually, this Court has been consistent in strictly construing statutes which appear to be in derogation of common law immunity.

A key Oklahoma statute relating to the county's immunity, 19 O.S.1971, § 1, provides:

"Each organized county within this State shall be a body corporate and politic and as such shall be empowered for the following purposes:

1. *To sue and be sued. [E.A.]*"

It appears this statute was first considered in 1918 in *Honnold v. Board of Commissioners of Carter County, 71 Okl. 71, 177 P. 71 (1918).* There, plaintiff sued on a contract. This Court acknowledged that the county could be sued on authority of the cited statute. The plaintiff's claim was rejected, however, because the contract involved was void.

Later, in *Consolidated School Dist. # 1 of Tulsa County v. Wright, 128 Okl. 193, 261 P. 953 (1927),* the court construed the provisions of Ch. 86, C.O.S. 1921, entitled "Schools", which provided that every school district may sue and be sued. The "sue and be sued" provision of the school code was strictly construed to apply only to actions arising out of the scope of school district duties. Our Court cited *Daniels v. Board of Education, 191 Mich. 339, 158 N.W. 23, L.R.A. 1916 F, 468,* as authority for strict construction. We have reviewed *Daniels* in an effort to ascertain what relationship existed between the rules governing construction of Michigan statutes in derogation of common law. We are satisfied there is a material difference between Oklahoma and Michigan in this regard. The Michigan Constitution of 1908, Sch. 4, § 1, provides: "The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are altered or repealed." While on the other hand, our 25 O.S.1971, § 29, reads: "The rule of common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this State, which are to be liberally construed with a view to effect their objects and to promote justice."

The "sue and be sued" provisions of 19 O.S.1971, § 1, supra, was also construed in *Andrews v. Proctor, 196 Okl. 272, 165 P.2d 610 (1945).* There the plaintiff's real property was damaged when the county changed the grade of a county road passing through plaintiff's land. This Court permitted the suit on the authority of our Constitutional provision contained in Art. II, § 24, which provides: "Private property shall not be taken or damaged for public use without just compensation, * * *", as well as permitting the suit to be brought under the "sue and be sued" provision of the statute. The *Andrews* Court noted specifically that private property could not be taken *or damaged* without just compensation even though such damage may arise from the county's negligence. Most importantly, the Court in *Andrews* stated that "Under 19 O.S.1941, § 1, the county can be sued and the *inhibition existing in cases against the state does not pertain to a county.*" (E.A.) The same rule would apply if the county negligently damages personal property. *Graham v. City of Duncan, Okl., 354 P.2d 458 (1960).* The *Andrews* Court's construction of 19 O.S.1941, § 1, was predicated upon *Honnold, supra. Andrews* makes no reference to *Wright, supra.*

This Court again construed 19 O.S.1971, § 1, in *Board of County Commissioners v. Guaranty Loan & Investment Corp., Okl., 497 P.2d 423 (1972)*. There, plaintiff sustained a loss by virtue of a failure of defendant county's employee to properly index a mortgage on certain real property. Relying on *Hazlett, supra,* and *Wright, supra,* this Court ordered sustention of demurrers to petition, strictly construing the "sue and be sued" provisions without a discussion of either *Honnold, supra,* or *Andrews, supra.*

After a review of the above cited cases, we conclude that an apparent inconsistency has emerged in Oklahoma's case law in the application of the doctrine of sovereign immunity of counties. As will be hereinafter demonstrated, we conclude that a strict construction of Oklahoma's Constitution and statutes was mistaken.

Without question, there exists a clear conflict between the common law rule that a county can neither sue nor be sued, and Oklahoma's statute permitting counties to "sue and be sued". There also exists a conflict between the common law rule that there can be no relief from wrongs committed by the sovereign and the Oklahoma Constitutional provision that there shall be a remedy for every wrong.

The Legislature has provided an aid in resolving conflicts of this nature. 25 O.S. 1971, § 29, supra, provides that statutes in derogation of the common law are to be liberally construed and the rule that statutes in derogation of common law be afforded strict compliance has no application to the laws of this State.

Stated another way, Oklahoma courts have no authority to strictly construe the statutes in order to preserve the common law. In our present view, we believe this Court has been misled by decisions from other jurisdictions which operate under substantially different statutory schemes. Consequently, we have failed to give effect to the legislative intent in our own state.

Aside from the question of the statutory—common law relationship, we find further guidance in 25 O.S.1971, § 1, which provides:

"Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, and except also that the words hereinafter explained are to be understood as thus explained."

■ There is no statutory explanation for the words "sue and be sued". Neither does the statute itself indicate that these words are to be given a particular meaning. We are bound therefore to understand the words in their ordinary sense. We are not free to devise our own limitations. See: *McVicker v. Board of County Commissioners of Caddo County, Okl., 442 P.2d 297 (1968); City of Bethany v. Hill, Okl., 509 P.2d 1364 (1973).*

■ Other jurisdictions construing identical "sue and be sued" statutory provisions have reached results not inconsistent with the plain language of our Title 19, § 1. As early as 1936, the Montana Supreme Court in *Johnson v. City of Billings, 101 Mont. 462, 54 P.2d 579, 581,* wrote:

"On the theory that a county cannot be sued because a 'sovereign' cannot be sued without its consent, we are not precluded from holding a county liable for the torts of its employees, for the Legislature has specifically granted to counties the power to 'sue and be sued' (§ 4444, Rev.Codes 1921), and has provided that a suit against a county must be brought in that county (sec. 9095, Id.), which section is held to permit suits generally against a county."

More recently, the Missouri Supreme Court, in *Jones v. State Highway Commission, 557 S.W.2d 225 (1977)* determined that:

"Section 226.100 R.S.Mo.1969 provides the state highway commission 'may sue and be sued in its official name' and designat[ed] on whom service of process may be obtained * * * This is sufficient consent to suit."

We are aware that other jurisdictions have given contrary effect to the words "sue and be sued". However, we devine

from those cases which have reached an opposite result that they were decided under strict rules of construction; while we are bound by statute to construe statutes in derogation of the common law liberally and interpret them in their ordinary meaning.

Again, addressing what is recognized as the genesis of the rule of sovereign immunity of counties, *Russell v. Men of Devon, supra,* it is interesting to note that that case was not based upon the theory that the county was an offspring of the sovereign, but rather upon the lack of a corporate fund, or means of securing it, for the payment of damages. *Russell* is misunderstood by those who believe that the extension of governmental immunity to a county is predicated upon the medieval English theory that "the King can do no wrong."

The underlying rationale of *Russell,* that there was no means to secure the payment of damages, has no application in this jurisdiction by reason of legislative enactment. Not only has the Legislature provided that suit may be brought against a county, but it has also provided the method whereby judgments may be satisfied.

One reason for our refusal to allow suit in *Wright, supra,* was our concern that the Legislature had not provided a fund for satisfaction of judgments. The Oklahoma Constitution, Art. X, § 28, provides:

"Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, *for the payment of such parts of judgment as such* municipality may, by law, be required to pay."

Again, Title 19, O.S.1971, § 6, provides: "When a judgment shall be rendered against the board of commissioners of any county, or against any county officer in any action prosecuted by or against him in his official name, *where the same should be paid by the county,* no execu-

tion shall issue upon the said judgment, but a tax sufficient to pay same shall be levied and collected in like manner as other county taxes, and when collected shall be paid by the county treasurer on the delivery of the proper receipt and the signing of an acknowledgement on the court record of said judgment, by the party in whose favor the judgment was rendered, or by his attorney of record, that same has been satisfied." [3]

It is therefore certain that our Legislature contemplated that counties could and would be sued and therefore provided prudent measures to finance these occurrences.

Taxpayers of the various counties may now be protected against the special levy as provided by our Legislature, Art. X, § 28, supra, and 19 O.S.1971, § 6, if the county purchases adequate liability insurance as authorized by 51 O.S.Supp.1978, § 169. It is only in the event of inadequate insurance coverage or no coverage that the special levy may be had. 51 O.S.Supp.1978, § 159.

Having concluded that the State has waived immunity in so far as counties are concerned, we stress that the only question now before us involves liability arising from proprietary functions. *We expressly reserve judgment on the issue of county liability arising out of governmental, as distinguished from proprietary, functions.*

We then move to the issue of whether maintenance as distinguished from construction, of county roads is a proprietary function. The answer must be in the affirmative.

■ It is well settled in Oklahoma that road maintenance is proprietary in nature when performed by municipal corporations.

■ *City of Ardmore v. Stuchul, Okl., 294 P.2d 308 (1956); Lane v. City of Tulsa, Okl., 402 P.2d 908 (1965); Swart v. City of Vinita, Okl., 551 P.2d 1107 (1976).* There appears no good reason why, in modern times, a duty of care should be more odious to one entity than to the other.

3. See, 62 O.S.1971, § 365.5, as dealing with post-judgment procedures concerning State sub-divisions generally.

Counties and municipal corporations occupy identical positions under our statutory scheme. 19 O.S.1971, § 1, supra, states that counties are "body corporate and politic", empowered to "sue and be sued."

11 O.S.1971, § 568, reads:

"All cities governed by the provisions of this Chapter shall be *bodies corporate and politic*, and shall have the power to sue and be sued, * * * " (E.A.)

Quoting McQuillin on Municipal Corporations, § 54.01, "The reason for the distinction between municipal corporations and quasi-municipal corporations in this respect, has never been satisfactorily explained." This subject was thoughtfully analyzed in *Johnson v. City of Billings, supra* :

"Turning, then, to the reason for and the reasonableness of the rule exempting counties from liability for injuries on highways, it would seem that there is as little justification for the rule as there is for failing to include cities within its cloak of immunity. As heretofore indicated, it is based upon the common law exemption of a county as an arm of the sovereign; yet the American 'county' differs so radically from its counterpart in England, that it would seem, logically, that the rule of the English common law should never have been applied to questions arising with regard to our counties." [4]

Professor Vanlandingham, one of the few scholars to speak kindly of the sovereign immunity doctrine in recent years, in his article "Local Governmental Immunity Reexamined", supra, had this to say about the immunity distinctions existing between counties and cities, "Viewing the state-local legal relationship, it seems unrealistic to hold the municipality liable while at the same time holding the county immune."

The only question remaining for purposes of this opinion is whether the alleged acts of negligence arose from the performance of a proprietary or a governmental function.

Defendant county maintains this Court, in *Lowe v. Storozyszyn, 183 Okl. 471, 83 P.2d 170 (1938)*, has in fact declared that road maintenance, when performed by a county, is a governmental function. A careful reading of *Lowe* demonstrates that the Court was not addressing county liability for the torts of its employees. Nor was this Court focusing on the governmental/proprietary dichotomy. Furthermore, the nature of the function in question in *Lowe* was substantially different in character from the function herein considered. Appellant is not complaining of negligent acts arising from the performance of a duty imposed by statute upon the county.

█ As we pointed out in our first consideration of this case, *Terry v. Edgin, supra*, the accident occurred within the city limits of Norman. The county is under no duty to maintain city streets. The primary and non-delegable duty to maintain city streets must necessarily rest with the city itself, *Terry v. Edgin, supra.*

The county may, however, contract to perform maintenance functions on any street within a municipality, where such street is a continuation of a state or county highway. 69 O.S.1971, § 603, provides:

"The Board of County Commissioners of any county may, under the direction of the Commission, contract for grading, draining or hardsurfacing any street within any municipality where such street is a continuation of or a connecting link in the State or County Highway System."

█ The operative feature of this statute is that it is permissive in nature. The only duties born by the county in connection with the street on which the accident in this case occurred were voluntarily assumed pursuant to a contract executed under the authority of § 603. A county is acting in its proprietary capacity when it performs duties which it has voluntarily assumed. *Granite Oil Securities v. Douglas County, 67 Nev. 388, 219 P.2d 191 (1950); Henderson v.*

4. 54 P.2d at 582. Note: Sovereign immunity as originally announced in Oklahoma Territory did in fact encompass townships. *James v. Trustees of Wellston Township, supra.*

*Twin Falls County, 56 Idaho 124, 50 P.2d 597 (1933).*

■ It has been suggested that, since this Court has ruled that the building of State highways is a governmental function, *Henry v. Oklahoma Turnpike Authority, Okl., 478 P.2d 898 (1970),* and since counties are merely subdivisions of the State, the maintenance of county roads must necessarily be a governmental function. Such an analysis is erroneous in two respects. First, our decision here is not concerned with the *building* of highways, but focuses rather upon maintenance. Nothing in this opinion is inconsistent with our former rulings that the building of State roads is a governmental function. Of more importance, however, is the fact that State and County highway systems are completely distinct and separate phenomena in Oklahoma. According to 69 O.S.1971, § 501(a), "The highway system of the State of Oklahoma shall be divided into two classes, to-wit: State Highway System and County Highway System . . . ." Further, at 69 O.S.1971, § 601, the statute provides:

> "The County Highway System shall be composed of all public roads within any county, less any part of any road or roads which may be taken over on a State highway by the Commission. . . . The Boards of County Commissioners of the various counties shall have *exclusive jurisdiction* over the designation, construction and maintenance and repair of all the county highways and bridges therein." (E.A.)

In other words, the State has no more authority over County highways, so long as they remain county highways, than it does over municipal roadways. This strengthens our conclusion that there is no sound reason for insisting that maintenance of municipal roadways is proprietary while maintenance of county roadways is governmental.

In summary, the scope of the common law immunity doctrine is to be found in our statutes. Oklahoma Statutes expressly provide that a county can be sued. Oklahoma further provides that statutes in derogation of the common law are to be liberally construed and that words used in the statutes are to be understood in their ordinary sense. Some early Oklahoma cases have failed to give effect to these statutes, and the misunderstanding created by this failure have not yet been corrected. To the extent that these cases hold that counties may not be held liable for negligent injuries inflicted in the course of the performance of a proprietary function, they are hereby overruled.

The order of the trial court sustaining a demurrer to the plaintiff's amended petition and dismissing the cause is hereby reversed and the case remanded to the trial court with directions to reinstate plaintiff's amended petition.

■ Because Oklahoma's counties could conclude that they would in no event be held liable for the tortious conduct of county employees, we feel that the counties should be provided with an opportunity to secure protection. We therefore decide that the rule laid down in this opinion be given prospective effect only, as to all other causes of action that may have arisen prior to the promulgation of this opinion. We are fully aware that other litigants would be able to raise the same issues and rely on the same authorities should we apply this rule retroactively from the date of promulgation. And, while it may be unfair to deny them their opportunity, it would be just as unfair to summarily overrule precedents upon which the counties have come to rely without providing an opportunity to take measures to protect themselves from suit. As the United States Supreme Court has observed:

> "Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue. But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decision-making." *Stovall v. Denno, 388 U.S. 293, at 301, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).*

REVERSED AND REMANDED.

**236**

HODGES, BARNES and DOOLIN, JJ., concur.

OPALA, J., concurring specially.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS and HARGRAVE, JJ., dissent.

LAVENDER, Chief Justice, dissenting:

The majority opinion relies on Title 19 O.S.1971, § 1, which provides that a county may sue and be sued, and the statute which provides for measures by which counties might finance payment of judgments. Title 19 O.S.1971, § 6. The provisions of Okla.Const. art. X, § 28 are also cited. I do not find these authorities to persuasively support the position of the majority opinion. Arguments that sovereign immunity has been thus waived have been denied in previous decisions of this Court. I find nothing here which would cause me to disagree with the reasoning of our earlier opinions.

Title 19 O.S.1971, § 1 has been said not to serve as a waiver of sovereign immunity or authorize negligence actions against the county, and it has been reiterated that absent a statute specifically and expressly imposing liability for damages upon statutorily created political subdivisions of state government for negligence, there is no such liability. *Board of County Commissioners v. Guaranty Loan & Investment Corp.*, Okl., 497 P.2d 423 (1972). This Court has also consistently held that a county is not liable for damages resulting from the negligent conduct of an officer or employee, despite the existence of statutes providing for measures by which counties might finance payment of judgments.[1] *Hazlett v. Board of County Commissioners*, 168 Okl. 290, 32 P.2d 940 (1934). Merely providing a procedure for financing judgment does not lead to the conclusion that the legislature intended an abrogation of sovereign immunity with regard to tort liability. The legislation was intended to cover circumstances where judgments have traditionally been allowed against counties: e. g. where land is taken for a lawful public purpose (emi-

nent domain). *Board of Commissioners v. Baxter*, 113 Okl. 280, 241 P. 752 (1925).

In addition, the majority opinion emphasizes Title 25 O.S.1971, § 29, which provides that statutes in derogation of the common law are to be liberally construed to effect their objects and to promote justice. The purpose of this statute is to allow effectuation of expressed legislative intent. *In re Captain's Estate*, 191 Okl. 463, 130 P.2d 1002 (1942). We have also held that important aspects of the common-law will not be held abrogated by inference from subsequent statutes which do not expressly or necessarily destroy them. *Roxana Petroleum Co. v. Cope*, 132 Okl. 152, 269 P. 1084 (1928). A statute creating the capacity to sue and be sued does no more than create that capacity, where the right is not otherwise limited by statute or decisional law. Authority to maintain an action in negligence must be premised on statutory waiver. *Sullivan v. Big Horn County*, 66 Mont. 45, 212 P. 1105 (1923).

One, if not the principal, reason assigned by the majority opinion for upholding the right of the injured plaintiff to maintain suit against the defendant-county is the theory that, because a city would be held liable under the same circumstances (for negligence in maintaining streets), the county should also be held liable (for negligence in maintaining county roads). However, cities and counties are fundamentally different and the fundamental differences between the two serve as the basis for holding a city to be involved in a proprietary activity when maintaining streets while holding a county to be involved in a governmental activity when maintaining county roads.

In *James v. Trustees of Wellston Township*, 18 Okl. 56, 90 P. 100 (1907), there is presented an in-depth analysis of liability with regard to cities, townships, counties, and states. A clear distinction is made between cities and townships:

---

1. Statutes providing for means for counties to finance payment of judgments have been on the books since statehood, yet this court has consistently ascribed to the court-made doctrine of sovereign immunity with regard to tort liability on the part of counties.

Cities, towns, and villages are municipal corporations proper, while counties, townships, school districts and road districts are quasi corporations. The difference between the two classes of corporations is well established, and a principle applicable to one class is not necessarily applicable to the other.

90 P. at 102.

As noted in *James*, supra, 90 P. at 105, counties are but subdivisions of the state and a suit against the county is in effect a suit against the state. However, cities are merely municipal corporations, voluntarily formed, and the sovereign immunity of the state in no way extends to such corporations. The powers and duties of a county are the powers and duties of the state of which the county is the agent and governmental duties of the sovereign are not, absent clear waiver, amenable to individual tort suit.

Cities are corporate bodies capable of much the same acts as private corporations, and having special and local interests and relations, not shared by the state. Cities are voluntarily formed municipal corporations formed generally for the benefits of the inhabitants thereof, whereas counties are legislatively mandated subdivisions of the state. It is unreasonable to hold an entity liable for negligence in the performance of duties imposed upon it by the legislature, as distinguished from those voluntarily assumed. W. Prosser, Law of Torts § 131 at 978 (4th ed. 1971).

A long list of opinions of this Court appears in the 1970 opinion in *Henry v. Oklahoma Turnpike Authority*, Okl., 478 P.2d 898 wherein it is written:

". . . highways, . . . are the property of the State and in the building of such the State is acting in its governmental capacity, rather than business capacity."

In *Board of Com'rs of Seminole County v. Barker*, 119 Okl. 206, 249 P. 296 (1926) it was held:

"In this state counties are merely quasi municipal corporations charged by law with certain governmental and administrative functions as state agencies, and as such are not liable in damages for negligence in the construction of a bridge, which results in injury to one using the same, in the absence of express statute, and the board of county commissioners is without legal authority to bind the county by contract to pay such character of claim."

It was also said in that case: "That these quasi municipal corporations are not liable for the negligent construction of bridges [and] highways has been determined by this court and is no longer an open question. (Cases cited.)"

I can only reiterate what was stated by Justice Davison for the Court in *Henry v. Oklahoma Turnpike Authority*, supra. First, quoting from an earlier case:

"The right of the sovereign state to immunity from suit is a public right and must not be treated as relinquished or conveyed away by inference or construction, and statutes must clearly permit the states to be sued or the right to do so will not exist." [2]

and,

". . . If the present policy is to be changed it should be done by the legislature, as representatives of the people, and not by [the] court."

I understand the majority opinion takes the position the county-defendant here voluntarily assumed the obligation to maintain the road involved when it entered into a contract with the city-defendant for that

---

2. Notwithstanding statements in some recent opinions that a waiver may be implied [*Coffey v. Robert McMullan & Son, Inc.*, Okl., 570 P.2d 1152 (1977); *State Bd. of Pub. Affairs v. Principal Funding Corp.*, Okl., 542 P.2d 503 (1975); *State ex rel. Coffey v. District Court of Okla. Co.*, Okl., 547 P.2d 947, 951 (1976); *Lamont Ind. Sch. Dist. # I -95 of Grant Co. v. Swanson*, Okl., 548 P.2d 215 (1976)], the Court has uniformly adhered to the principle of governmental immunity for tort liability and, if an implication that a waiver of the immunity is relied on, the circumstances must be such so that one would be lead to no other conclusion except that waiver of immunity was intended and did occur.

purpose. I do not find that by agreeing to do some of the maintenance the county commissioners thereby waived the county's immunity from suits in tort. Immunity was waived to an action upon the contract. The immunity of the county from suit in tort remains unaffected, in my view. Certain it is, the plaintiff can point to no provision in the city/county contract by which the county agreed to be liable in tort for the negligence of its officers and agents. But, regardless of these facts, limited as they are to the circumstances of this case, the majority opinion would apparently reach the same result, namely that the maintenance of county roads by a county is a proprietary function in the negligent exercise of which the general funds of the county may be reached. It is with these conclusions I most strongly disagree.

In 1978 the Legislature, obviously believing the doctrine of sovereign immunity would continue to be upheld as it had been since statehood, nevertheless, in the interest of providing some compensation to persons injured by the negligence of public employees, passed "The Political Subdivision Tort Claims Act." It now appears as Title 51 O.S.1978 Supp., §§ 151–170. Although it was not in effect at the time the cause of action here arose, it is my view that by the passage of such legislation the doctrine of sovereign immunity was legislatively recognized and adopted as the official public policy of the state.

The Legislature is much more able to provide the policy in the area of sovereign immunity than are the courts. The Legislature is aware of the limited funds available to the various political subdivisions for the payment of injury claims, or for the payment of insurance premiums, and can provide accordingly.

In this case I would hold that the doctrine of sovereign immunity continued fully extant in this jurisdiction until, and then only to the extent, modified by the above act of the Legislature.

I am authorized to state that IRWIN, V. C. J. and WILLIAMS, J., concur in the views herein expressed.

OPALA, Justice, concurring specially:

The court is correct when it rejects today, on grounds of doubtful historicity, the widely assumed notion that the common-law rule of sovereign immunity from tort liability extends a shield of protection as to all county functions, governmental and proprietary. Even if I were not convinced that our result here rests on solid historical antecedents, I would nonetheless concur in the court's opinion because, in my view, the common-law rule no longer merits our continued recognition *in any form.* Our commitment to that norm of judge-made law should be withdrawn prospectively for the reasons advanced in my concurring opinion in *Walton v. Charles Pfizer & Co., Inc.,* Okl., 590 P.2d 1190, 1194–1195 [1979].