Ruby J. HERSHEL, surviving spouse of Ray Hershel, deceased, Appellant,

v.

UNIVERSITY HOSPITAL FOUNDATION, Hugh Robinson, M.D., T. Elliott, M.D., J. Parkhurst, M.D., S. Cagle, M.D., Appellees.

No. 53137.

Supreme Court of Oklahoma.

April 15, 1980.

John W. Norman, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Victor G. Hill, Jr., Asst. Atty. Gen., Oklahoma City, for appellees.

HARGRAVE, Justice.

Ray Hershel entered University Hospital for the purpose of correcting blood circulation anomalies by the application of an aorta femoral artery bypass procedure on December 30, 1976. During this procedure, a significant quantity of laparotomy pads were allowed to remain inside the decedent Ray Hershel's abdomen. Twelve days later a second surgery was performed and these pads were removed, but the decedent's condition continued to deteriorate until, on January 21, 1977, he died. Ruby Hershel, decedent's surviving spouse, filed this action in tort for the wrongful death of her husband caused by the negligence of the above named parties defendant occurring, as above stated, during the course of the treatment and care rendered the decedent. The defendant, University Hospital, filed a general and special demurrer to the cause of action alleged, invoking among others the defense of Sovereign Immunity. On December 8, 1978, the trial authority of the District Court of Oklahoma County ruled the University Hospital was protected from liability on this cause of action under the doctrine of sovereign immunity and sustained that defendant's demurrer, and thereafter dismissed the action against the hospital. From that final order the plaintiff appeals.

A resolution of the issue presented by this appeal requires discussion first of the character of the activity undertaken at the hospital in order that a concise determination may be made of the State's liability to suit for failure to accomplish those duties. Within *City of Shawnee v. Roush, 101 Okl. 60, 223 P. 354 (1924),* the Court discusses the distinction between the classes of powers possessed by that governmental subdivision of the State and recognized from the early date of *Roush* that a city possesses both governmental and proprietary powers. Therein we recognized that all functions of municipal government tend to benefit the citizens of the municipality by tracing an indirect relation to health, safety, welfare or other subject of governmental scope and cognizance. Therefore such a casual link between the activity sought to be classified and the governmental interest indirectly benefited cannot be utilized as the sole indicia of classification between governmental and proprietary functions. An indicia of a proprietary function is that it is quasi-private in nature and exercised not for the purpose of governing its people but for the private advantage of the inhabitants of the city, and the city itself as a legal personality. Remembering these activities are uniformly traceable indirectly to health, safety and welfare of the citizenry, *Roush* notes that if the power exercised is substantially one of local or corporate nature, the city cannot escape responsibility for its careless

performance simply because it relates in a general manner to a function of government. In discussing whether a hospital operated by a municipal corporation is a proprietary function, *Roush* states that as a proprietary function relates to such purposes in which the municipality furnishes conveniences to its inhabitants for their private advantage for compensation, the operation of a hospital comes within the ambit of this definition and "completely disposes the proposition urged by counsel in this regard", being the argument that the operation was governmental. Clearly, the party primarily benefiting from the hospital's operation is not the State but those private individuals treated therein, "for the private advantage of the inhabitants of the city." The actions of a city undertaken in operation of a hospital was again affirmed to be proprietary and not governmental in *City of Pawhuska v. Black, 117 Okl. 108, 244 P. 1114 (1926).* In *Black,* the Court expanded upon its decision of *Roush, supra,* as *Roush* establishes to what extent the fact that a hospital does or does not accept charity patients affects its liability. In *Roush,* the Court correctly noted that the simple fact an organization is run as an eleemosynary institution is not sufficient reason to insulate it from the liability created by its breach of a duty owed the complaining party, once that duty is assumed by the institution, saying:

"it is impossible to now support any claim of exemption on the part of an eleemosynary institution or an institution operated for other than profit or gain, at least as against the claim of a pay patient for negligence."
*Shawnee v. Roush, 101 Okl. 60, 223 P.* at *355.*

In *City of Pawhuska v. Black,* decided two years after *Roush,* this Court was presented with a tort action against a municipal hospital by an aggrieved party the opinion indicates may not come within the paying-patient criteria of *Roush;* for therein the Court noted the hospital had charged only a nominal fee for its services to plaintiff, and that fee was not sufficient to allow recovery of a profit. The Court stated that the defendant hospital was liable to the plaintiff "unquestionably under the decision heretofore [rendered in *Roush* ]," *supra.*

In the later case of *City of Okmulgee v. Carlton, 180 Okl. 605, 71 P.2d 722 (1937),* the issue of sovereign immunity insulating a municipal corporation from liability for negligent treatment of a patient was again addressed. Appellant City brought an appeal after a jury verdict against it alleging the operation of the hospital by the city was a governmental function and no action may lie for negligent performance of those duties. There the Court held the rule discussed in *Roush, supra,* and *Black, supra,* definitely places the maintenance and operation of a hospital within the scope of the cities' proprietary powers, stating that where a municipal corporation operates and maintains a hospital for compensation, it is acting in a quasi-private manner and cannot avoid liability by reason of its municipal character. Again the Court touched upon the effect treatment of indigent patients had on this proprietary nature of the operation of the hospital:

It is obvious that there is no express power conferred upon a municipal corporation to provide for free hospitalization, even though the helpless and the indigent are often cared for. For a municipal corporation to take steps to provide medical services and attention for those who request such services is, in effect, an entrance into the business of providing such services in competition with other similar, private agencies. When a city chooses to voluntarily assume and exercise powers intended for private advantage and benefit of the locality and its inhabitants, there seems to be no good reason for absolving the city from the liability to a suit for damages to which an individual or private corporation, exercising the same powers for private purposes, would be liable. In respect to such business relations a municipal corporation must be held to the same standard of dealing that the law provides for individuals or corporations.

It is to be seen that hospitals operated by municipalities have been held to be proprietary functions of municipal corporations, even where the operation was not designed or operated to establish a profit from an early date in this jurisdiction. *State ex rel. Dept. of Public Welfare v. Martin, 570 P.2d 623 (Okl.1977),* determined that Children's Memorial Hospital was immune from suit, not on the basis of a finding that the operation of a hospital was a governmental function but on the basis that state government enjoyed immunity from suit regardless of the character of the act undertaken. Insofar as *Martin, supra,* may be read to be in conflict with the views expressed herein, it is overruled. Thus, at this time this jurisdiction faces an unbroken line of authority establishing the operation of a hospital as a proprietary function of government.

Hospitals generally serve the interest of the purchasers of its services, patients, in the most private sense of advancing their individual bodily well-being, and benefit the community only indirectly insofar as the total of individual benefits enhances the well-being of the community. As noted, the indirect link to governmental interest does not disturb the character of the institution as a proprietary entity. The interest served the recipients of the services provided are fundamentally private when referring to a general hospital, and in this instance, the fundamental character of the institution as viewed from the provider of these services is also mainly proprietary in character, as evinced by statutory authority, Title 70 O.S.1979 Supp. § 3306.1, as first amended in 1973, which provides in part:

It is the purpose and intent of this act to provide for a more effective and efficient administration and a more dependable funding of the operations of the University Hospital, which has heretofore been under the management of the Board of Regents of the University of Oklahoma although recognized as a separate institution; . . . The Legislature finds that this can best be done by separating the University Hospital from the University of Oklahoma and establishing an independent agency to operate the hospital, . . . It is the intention of the Legislature that the University Hospital will be a general hospital, . . .

That mandate is repeated in 70 O.S.1979 Supp. § 3306.4, formerly 70 O.S.1973 Supp. § 3306.4. "The University Hospital shall be operated as a general hospital, . . ." Both 70 O.S.1979 Supp. § 3306.1 and 3306.4 also state that the University Hospital shall be a general hospital which is "available as a teaching and training hospital." Such language presents a stark contrast to the statutory language preceding it, 70 O.S.1971 § 3306 (enacted in 1965) which stated University Hospital at the University of Oklahoma Medical Center shall be a teaching and training hospital for the said medical center. In the special context of medical service, the fact that treatment of Oklahoma citizens' health problems serves the additional function of medical staff education does not render the health care provider an educational institution such as is traditionally classed as a governmental function. The primary benefit and service provided is health care under the statutory scheme of 70 O.S.1979 Supp. § 3306.1, (enacted in 1973) and as we have previously held where the governmental entity involved was a city, where the state chooses to voluntarily assume and exercise powers intended for private advantage and benefit of the locality and its inhabitants, there seems to be no good reason for absolving the state from liability from suit for damages to which an individual or private corporation exercising the same powers for private purposes would be liable.[1]

---

1. The concept of voluntary assumption of powers and duties which has been used as one indicia of the character of an activity as governmental or proprietary where city and county functions are discussed must be examined with care before application to state functions. Cities and Counties, as subdivisions of the sovereign power of the State, are at times commanded by the State to do an act or carry out a course of conduct by statutory enactment of the State. From the standpoint of the State subdivision of government, these acts can be said not to be voluntarily undertaken. The State, however, through its legislature, and the

Under our prior decisions, the activities undertaken by University Hospital are proprietary in nature. The next inquiry is whether the state, when it breaches a duty to those it provides services, is to be held to the same standard of dealing that the law now provides for individuals, corporations, municipalities and counties undertaking proprietary functions.

In *Terry v. Edgin, 598 P.2d 228 (1979)*, this Court held that counties are not immune from liability for tortious conduct occurring during the performance of a proprietary function, stating that conclusion arises in part from Art. II, Section 6 of the Oklahoma Constitution, declaring there shall be a remedy afforded for every wrong, and 25 O.S.1971 § 29, providing that statutes in derogation of the common law are not to be strictly construed, but to be construed liberally with a view to effect their objects and promote justice. The dissent to that holding pointed out:

One, if not the principal reason assigned by the majority opinion for upholding the right of the injured plaintiff to maintain suit against the defendant-county is the theory that, because a city would be held liable under the same circumstances . . . the county should also be held liable. . . . However, cities and counties are fundamentally different and the fundamental differences between the two serve as the basis for holding [the county not liable].

The fundamental distinction as described in the dissent was attributed to *James v. Trustees of Wellston Township, 18 Okl. 56, 90 P. 100 (1907)*, wherein the Court noted counties are but subdivisions of the state and a suit against the county is in effect a suit against the state, whereas cities are municipal corporations, voluntarily formed, and the sovereign immunity of the state in no way extends to such corporations. Having resolved to apply the more than tradi-

tional protection of Article II, Section 6 of the Oklahoma Constitution, declaring a remedy for every wrong, to those factual instances where a tort is committed by a county, we now are constrained by the same analysis to find the state is similarly liable for injury occasioned by torts committed by the state arising from proprietary functions. Not to do so would deny a remedy to an Oklahoma citizen injured by the parent governmental authority and at the same time impose liability on governmental subdivisions of the state and municipal corporations for similar acts, thus imposing liability on all governmental entities save the largest, that being the sovereign. As the dissent in *Terry, supra,* clearly demonstrates, there is a broader basis in the law for distinguishing between municipal corporations and the state or its subdivisions than there is for distinguishing the state on the one hand and municipal corporations and counties on the other hand. Such a conclusion is not without harbinger in the prior law of this jurisdiction, being foreshadowed at several points in Oklahoma case law. The precedent of *Hamilton v. Okla. City, 527 P.2d 14 (Okl.1974)*, was criticized in a concurring opinion to *Walton v. Pfizer & Co., 590 P.2d 1190, (Okl.1979)*:

The archaic concept of immunity unfairly singles out our government qua tortfeasor, for a legal treatment that is vastly more favorable than that accorded an ordinary citizen whose actionable conduct inflicts injury on another person.

The commitment of one Justice to the application of the dichotomy of proprietary liability-governmental immunity for state activities was noted in *Schrom v. Okla. Industrial Development, 536 P.2d 904, (Okl.1975)*, wherein the concurrence states that the majority opinion in holding liability on the state's part in *Schrom* arises solely from a waiver occurring by the purchase of insurance could be read to establish:

people at large, through the power of initiative and referendum, enact such laws as they see fit. These enactments are often mandatory commands once enacted, but care is required in determining whether or not such duties were *voluntarily assumed* in the first instance by the

enacting body when that criteria is utilized in the proprietary-governmental determination, distinguishing therefrom the fact the duties may be mandatory once the legislation is enacted.

242

. . . a poorly conceived precedent by bringing all agencies of the State whether governmental or commercial in nature, within the penumbra of the anachronistic doctrine of governmental immunity . .

The concurrence states in its ultimate paragraph:

I would prospectively hold that governmental immunity shields the State from liability arising in tort in only governmental, as distinguished from proprietary functions.

Additionally, this Court has on occasion recognized the proprietary-governmental distinction in majority opinions from an early date, *Choctaw Pressed Brick v. Townsend, 108 Okl. 235, 236 P. 46 (1925)*, wherein the following paragraph appears:

It is contended that injunction will not issue against defendants herein for the reason that the state nor its officers are included within, or at least not specifically named in, the statute in question [requiring any person, firm or corporation to label convict-made goods]. But it must be borne in mind that the state, in engaging in a mere business enterprise, is not thereby discharging a governmental function, but is a mere business institution, the same as a corporation or partnership or an individual.

Immediately thereafter, the Court notes in *Choctaw Pressed Brick, supra*, that while Section 31 of Article II of the Constitution authorizes the state to engage in business if it chooses to do so, or decline if it so chooses, but when the state elects to engage in business it becomes merely a business institution, and as such, subject to the same constitutional and statutory requirements as are other business enterprises. Similarly, the governmental-proprietary distinction was applied to the state in yet an earlier case, *Rice v. State, 108 Okl. 4, 232 P. 807 (1925)*. The Court also applied the proprietary-governmental distinction to the facts of the case in *Grand River Dam Authority v. Grand-Hydro, 188 Okl. 506, 111 P.2d 488 (1941)*. *Henry v. Okla. Turnpike Authority, 478 P.2d 898, at p. 901 (Okl.1970)*, contains two-thirds of a column of citations to cases supporting the proposition that the state is immune from suit without waiver or consent, and there the Court notes: "The above cases involve situations where the State was acting in a governmental capacity." In *Henry, supra*, the Court did not address the plaintiff's argument that immunity should not exist for proprietary functions of state government inasmuch as the Turnpike Authority was a governmental agency acting in a governmental capacity and would therefore enjoy immunity under either theory. *State Insurance Fund v. Bone, 344 P.2d 562 (Okl.1959)*, is a recent opinion from this Court holding a state enterprise a proprietary function not enjoying sovereign immunity. In *Bone, supra*, the Court held:

. . . and we now hold that the State Insurance Fund is a business enterprise as distinguished from purely governmental activities, and tort liability attaches and may be adjudicated.

The rule expressed in *Terry v. Edgin, supra*, is expressly extended to the State of Oklahoma. The liability of the state for tortious conduct arising from the performance of a proprietary function is analogous to that of a municipal corporation and county. The dismissal of plaintiff's action is vacated, and the cause is remanded for trial with instructions to overrule the defendant's demurrer.

REVERSED AND REMANDED.

LAVENDER, C. J., and HODGES, BARNES, SIMMS and DOOLIN, JJ., concur.

OPALA, J., concurs specially.

ERWIN, V. C. J., and WILLIAMS, J., dissent.

OPALA, Justice, concurring specially:

I join the court's opinion because it represents a significant stage toward withholding from our recognition that anachronistic norm of judge-made law which relieves the state from liability for *all* tortious conduct

by persons acting under its authority.[1] The solution offered by today's pronouncement is far from satisfactory. State functions do not naturally fall into a dichotomous governmental/proprietary division. Our attempt to so arrange them is bound to be productive of much sophistry *via* a strained application of ill-suited test criteria. If this is indeed likely to happen, the life of the intermediate stage we launch today will be short and its demise imminent and near.[2]

I am authorized to state that HODGES and DOOLIN, JJ., concur in these views.

1. *Walton v. Charles Pfizer & Co., Inc.,* Okl., 590 P.2d 1190 [1979].

2. My views are stated in *Walton v. Charles Pfizer & Co., Inc.,* supra note 1 at 1194 (special concurring opinion by Opala, J.) and in *Terry v. Edgin*, Okl., 598 P.2d 228, 238 [1979], (special concurring opinion by Opala, J.).