Grace Fay McGAHA, Arnold Ray McGaha, Nancy Rae McGaha, a minor child By and Through her father and next friend, Arnold Ray McGaha, Appellants,

v.

The BOARD OF REGENTS OF the UNIVERSITY OF OKLAHOMA, Appellee.

No. 58222.

Supreme Court of Oklahoma.

Nov. 20, 1984.

G. Rodney Palmer, Oklahoma City, for appellants.

Stanley M. Ward, Kent F. Ockershauser, Susan Gail Seamans, Norman, for appellee.

KAUGER, Justice.

The questions presented on appeal are whether the Board of Regents of the University of Oklahoma is insulated from tort liability because of the doctrine of sovereign immunity, whether legislative authority to purchase liability insurance results in a waiver of the Board's immunity, and whether denial by this Court of a writ of prohibition is a prior judicial determination of the questions. We find that the doctrine of sovereign immunity is a bar to liability,

that it was not waived by the failure of the Board to purchase insurance, and that denial of a writ of prohibition is not res judicata.

Grace McGaha entered the University Hospital as an obstetrical patient, and gave birth to a daughter on August 10, 1977. As a result of the treatment received, Grace and her husband, Arnold Ray McGaha (McGahas), appellants, sued University Hospital, the University of Oklahoma Health Sciences Center, the Oklahoma University School of Medicine, and various physicians and interns on August 9, 1979. The McGahas alleged that the hospital had been negligent in the delivery and in the care of their baby. The defendant entered an appearance, and the Board of Regents of the University of Oklahoma, appellee, (Board) filed a demurrer urging that the doctrine of sovereign immunity protected it from tort liability. The demurrer was overruled, and the Board sought a writ of prohibition to prevent the trial court from proceeding further in the matter. On July 25, 1980, this Court refused to accept original jurisdiction and denied the writ. The Board filed a motion for summary judgment in the trial court based on the applicability of sovereign immunity which was sustained on January 13, 1982. On January 15, 1982, the McGahas filed a motion to dismiss all defendants except the Board, and timely filed an appeal.

## I

### PRIOR REFUSAL TO ACCEPT ORIGINAL JURISDICTION AND DENIAL OF A WRIT OF PROHIBITION IS NOT A JUDICIAL DETERMINATION OF THE ISSUE OF SOVEREIGN IMMUNITY

■ The McGahas argue that this Court's refusal to accept original jurisdiction and denial of the application for writ of prohibition is a prior judicial determination that the Board was acting in a proprietary function, and that the doctrine of sovereign immunity had been waived. We do not agree. Before the doctrine of res judicata may be invoked, there must be a final judicial determination on the merits of the issues. A denial of an application for a writ of prohibition does not necessarily reflect any view on the merits, but rather may, and very often does, constitute only a ruling that the issuance of the extraordinary writ is unwarranted.[1] The doctrine of res judicata is inapplicable in this procedural context.

## II

### EDUCATION IS A GOVERNMENTAL FUNCTION AND UNLESS THE DEFENSE OF SOVEREIGN IMMUNITY HAS BEEN WAIVED SUMMARY JUDGMENT WAS PROPER

■ At this time, unless immunity has been waived, the state remains immune from tort liability when it engages in governmental functions. The proprietary-governmental dichotomy remains the threshold question in determining liability until 12:01 a.m. October 1, 1985. Thereafter, because of the adoption of the Governmental Tort Claims Act,[2] the governmental-proprietary function will no longer be determinative in assessing tort liability for all levels of state government.

In *Hershel v. University Hospital Foundation*, 610 P.2d 237, 242 (1980), we held that the operation of University Hospital is a proprietary function, and that the State could be held accountable for tortious conduct resulting in personal injury. The

---

1. *Lindauer v. Oklahoma City,* 340 P.2d 221, 222–23 (Okla.1959); *Estate of Sympson,* 577 S.W.2d 68, 71 (Mo.App.1978).

2. 1984 *Oklahoma Sess. Law,* Ch. 226, S.B. No. 469 to be codified at 51 O.S.Supp. 1984 § 151 et seq; *Vanderpool v. State,* 672 P.2d 1153, 1156 (Okla.1983); *Hershel v. University Hosp. Found.,* 610 P.2d 237, 240, 242 (1980). *Terry v. Edgin,* 598 P.2d 228, 233 (Okla.1979).

McGahas contend that under the *Hershel* rule the trial court erred in granting summary judgment because the Board is a provider of medical care, and therefore is not immunized from suit under the doctrine of sovereign immunity. The McGahas do not allege that the Board acted negligently, wilfully, or wantonly. They argue only that the Board, as the governing body of the University of Oklahoma, is engaged in a proprietary function because it furnishes medical services to individual patients of University Hospital by staffing the hospital with physicians and interns from the Oklahoma College of Medicine. Conversely, the Board alleges that it operates an institution of higher learning, and that it is not engaged in the business of furnishing health care services for profit. The Board also argues that because the provision of physicians and interns from the Medical College insures an adequate supply of trained doctors thus benefiting the public at large, it is engaged solely in an educational and governmental function.

In *Hershel,* the Court held that University Hospital must be considered a general hospital susceptible to suit pursuant to 70 O.S. 1979 Supp. § 3306.4.[3] However, 70 O.S. 1979 Supp. § 3306.1[4] recognized that University Hospital is a separate institution from the Board. Effective July 1, 1973, in order to enable the Board to devote more attention to purely academic matters, the Legislature established an independent agency to operate University Hospital— The Board of Trustees of University Hospital. Eventually, on July 1, 1980, the control of University Hospital was transferred from the Board of Trustees to the Department of Human Services.[5] The general rule applied to laws in derogation of sovereignty is that a statute will not be construed to divest the state of its immunities unless the intention to do so is clearly

3. It is provided by 70 O.S. 1973 Supp. § 3306.4 in pertinent part:
   "The University Hospital shall be operated as a general hospital licensed by the State Commissioner of Health, ..."

4. It is also provided by 70 O.S. 1973 Supp. § 3306.1:
   "It is the purpose and intent of this act to provide for a more effective and efficient administration and a more dependable funding of the operations of the University Hospital, which has heretofore been under the management of the Board of Regents of the University of Oklahoma although recognized as a separate institution; and to enable the Board of Regents to devote more attention to matters purely academic and a concentrated performance of the basic function of the University of Oklahoma. The Legislature finds that this can best be done by separating the University Hospital from the University of Oklahoma and establishing an independent agency to operate the hospital, utilizing the buildings known as the University of Oklahoma Medical Center as "Old Main" Hospital Everett Tower, the Clinic Building and the Radiology Building. It is the intention of the Legislature that the University Hospital will be a general hospital, but will also be available for use as a teaching and training hospital for medical and paramedical students, and will maintain a close affiliation with the College of Medi-

cine of the University of Oklahoma, the Oklahoma Children's Memorial Hospital and other components, present and future, of the University of Oklahoma Medical Center, also known as the University of Oklahoma Health Sciences Center. It is the intent of this legislation that all medical care, teaching and research will be provided exclusively by the faculties of the colleges of the University of Oklahoma Health Sciences Center."

5. Effective July 1, 1980, University Hospital was renamed and the Board of Trustees was abolished by the enactment of 56 O.S. 1981 § 402
   "A. The hospital heretofore known as *University Hospital and renamed Oklahoma Memorial Hospital is hereby transferred from the Board of Trustees of University Hospital and from the Board of Regents of the University of Oklahoma* to the Department of Human Services, and shall hereafter be under the jurisdiction, supervision, management and control of the Commission for Human Services. The transfer shall include all property, buildings, furniture, equipment and records belonging to or now being used by the hospital.
   C. The Board of Trustees of University Hospital is hereby abolished; and all powers, duties, responsibilities and obligations of the Board of Trustees are transferred to, and shall be exercised and discharged by, the Commission for Human Services ..."

expressed.[6] Clearly, sovereign immunity continues to shield the Board of Regents.

Traditionally, education has been held to be a governmental function.[7] The Board of Regents serves as the governing body of the University of Oklahoma and acts as an arm of state government.[8] The Board performs a purely public or governmental function when it exercises its statutory and constitutional duties. The members of the Board are constitutionally created officers and they must be free to exercise administrative discretion. Such officials are generally immunized from suit if they exercise discretion in good faith and not in a willful and wanton manner.[9] We find that in the absence of a waiver of the safeguard of sovereign immunity the Board's operation of the University of Oklahoma is a public governmental function and that the Board is immune from liability.

**6.** *People v. Centi-O-Mart,* 34 Cal.2d 702, 214 P.2d 378–79 (1950).

**7.** *Hershel v. University Hosp. Found.* note 2, supra.

**8.** The Okla. Const., art. 13 § 8 provides:
"The government of the University of Oklahoma shall be vested in a Board of Regents consisting of seven members to be appointed by the Governor by and with the advice and consent of the Senate...."

**9.** *Neal v. Donahue,* 611 P.2d 1125, 1130 (Okla. 1980), *Butz v. Economou,* 438 U.S. 478, 506–07, 98 S.Ct. 2894, 2910–11, 57 L.Ed.2d 895 (1978) and comment "b" to the § 895D of the Restatement of the Law of Torts 2d (1979). Comment "b" provides in part:
"The basis of the immunity has been not so much a desire to protect an erring officer as it has been a recognition of the need of preserving independence of action without deterrence or intimidation by the fear of personal liability and vexatious suits. This, together with the manifest unfairness of placing any person in a position in which he is required to exercise his judgment and at the same time is held responsible according to the judgment of others, who may have no experience in the area and may be much less qualified than he to pass judgment in a discerning fashion or who may now be acting largely on the basis of hindsight, has led to a general rule that tort liability should not be imposed for conduct of a type for which the imposition of liability would substantially impair the effective performance of a discretionary function."

## III

## THE LACK OF PROOF OF INSURANCE COVERAGE DEFEATS THE ARGUMENT OF WAIVER OF SOVEREIGN IMMUNITY

■ The McGahas charge that if immunity does exist it has been waived by legislation authorizing the Board to purchase liability insurance.[10] The McGahas rely on *Schrom v. Oklahoma Industrial Development,* 536 P.2d 904, 909 (Okla.1975) which held that the legislative authorization to purchase liability insurance includes a limited consent to sue the insured agency, and waives governmental immunity *to the extent of insurance coverage.*[11] The Board's statutory authority to purchase liability insurance is permissive, not mandatory. Under our previous holdings, an effective limited waiver of immunity cannot exist unless there is statutory authority to purchase liability insurance and liability insurance is actually purchased.[12]

**10.** Authority to purchase liability insurance is provided by 70 O.S. 1981 § 4312. It provides in pertinent part:
"Boards of Regents, institutions and agencies comprising the Oklahoma State System of Higher Education are hereby authorized to carry general public liability insurance on their employees limited to their official assigned duties at said university.

.    .    .    .    .

To the extent that an insurer has provided indemnity in a contract of insurance to the Board of Regents, an institution or an agency to which the act applies, the said insurer may not plead as a defense in any action involving insurance purchased pursuant to this act the governmental immunity of either the State of Oklahoma or of any political subdivision or agency thereof which has purchased insurance authorized by this act."

**11.** If the authority to purchase liability insurance is permissive and the subdivision acquires insurance under the authority, the immunity is waived to the extent of the policy liability coverage. See G. Gibbons "Liability Insurance and the Tort Immunity of State and Local Government" 1959 Duke L.J. 588, 606 (1959).

**12.** In cases of injury where the state or its subdivision were operate in a governmental function, waiver of immunity has been implied if the governmental unit has authority to purchase liability insurance and has in fact purchased insurance. The waiver of immunity extends only to the amount of insurance actually purchased. *Nichols v. Dept. of Corrections,* 631 P.2d 746, 748 (Okla.1981); *Lamont Ind. Sch. Dist.*

The McGahas did not raise the issue of waiver of sovereign immunity in their pleadings.[13] Although the pre-trial order apparently was amended to allege that authorization to purchase liability insurance waived liability, the only evidence concerning the existence or nonexistence of liability insurance is the affidavit of William H. Jordan, Risk Manager and assistant to the vice-president of administrative affairs of the University of Oklahoma. He stated that he had been in charge of property and casualty matters for over 20 years; and that the University did not have liability insurance in force and effect for its physicians on the date of the injury.

Motions for summary judgment properly are sustained when the facts set forth in affidavits, depositions, admissions on file, and other competent extrinsic evidence reveal that there is no substantial conflict as to a material issue of fact.[14] The evidence before the trial court was that the Board had not purchased liability insurance, therefore, the Board has not waived the protection of sovereign immunity.

**AFFIRMED**

BARNES, C.J., SIMMS, V.C.J., and HODGES, LAVENDER, DOOLIN, HARGRAVE and ALMA WILSON, JJ., concur.

OPALA, J., concurs in Part I, concurs in Parts II and III by reason of stare decisis.

---

I–95 of Grant City v. Swanson, 548 P.2d 215, 216–17 (Okla.1976); *Thomas v. Broadlands Com. Consol. School Dist.*, 348 Ill.App. 567, 109 N.E.2d 636, 640 (1952). *Wilson v. Maury Ct. Board of Ed.*, 42 Tenn.App. 315, 302 S.W.2d 502, 505–06 (1957); *Rogers v. Butler*, 170 Tenn. 125, 92 S.W.2d 414, 415 (1936);

13. *Herweg v. Bd. of Educ. of Lawton Public Schools*, 673 P.2d 154–56 (Okla.1983).

14. *RST Service Manufacturing Inc., v. Musselwhite*, 628 P.2d 366, 368 (Okla.1981).