The ESTATE OF Vanessa JOHNSON, By and Through its Personal Representative, Betty JOHNSON, Appellant,

v.

OKLAHOMA CHILDREN'S MEMORIAL HOSPITAL, a/k/a State of Oklahoma Teaching Hospital, an instrumentality of the State of Oklahoma; Department of Human Services; and State of Oklahoma, Appellees.

No. 72249.

Supreme Court of Oklahoma.

June 23, 1992.

Merritt, Rooney, Collier & Rooney, Inc. by Ronald V. Collier, Merritt & Rooney, Inc. by Michael M. Blue, and John M. Merritt, Oklahoma City, for appellant.

Charles L. Waters, Gen. Counsel, Richard W. Freeman, Jr. and Roger Stuart, Asst. Gen. Counsel, Dept. of Human Services, Oklahoma City, for appellees Oklahoma Children's Memorial Hosp. and Department of Human Services.

HODGES, Vice Chief Justice.

As agreed by the parties, the single issue in this case of first impression is: Was the operation of Oklahoma Children's Memorial Hospital (OCMH) by the Department of Human Services on September 6, 1985, a governmental function so that the doctrine of governmental immunity was invoked? The trial court rendered summary judgment in favor of the defendants, OCMH, the Department of Human Services (DHS), and the State of Oklahoma (State) (collectively defendants) finding that the operation of OCMH was a governmental function and thus, the doctrine of sovereign immunity applied. The Court of Appeals reversed finding that the operation of OCMH at the relevant time was a proprietary function. We vacate the Court of Appeals' opinion and affirm the trial court.

The personal representative of the estate of Vanessa Johnson originally filed this suit against OCMH, DHS, State, and seven physicians. The plaintiff dismissed the action against five of the physicians. The petition alleged that the negligent acts of the defendants on September 6, 1985, caused the death of Vanessa Johnson on the same day.

At one time, the doctrine of sovereign immunity unconditionally protected the state from suit. *See State ex rel. State Dept. of Public Welfare v. Martin*, 570 P.2d 623 (Okla.1977). In 1980, this Court addressed the doctrine of sovereign immu-

nity and applied the governmental-proprietary function test. *See Hershel v. University Hospital Foundation*, 610 P.2d 237 (Okla.1980). In response to the *Hershel* decision, the Oklahoma Legislature enacted the Department of Human Services Tort Claims Act, Okla.Stat. tit. 56, § 515 (Supp. 1983). The act established liability limits for tort actions arising from DHS's proprietary functions while preserving immunity for governmental functions. *Id.* at § 515(B). In 1983, this Court rejected the governmental-proprietary distinction. *See Vanderpool v. State*, 672 P.2d 1153 (Okla.1983). The *Vanderpool* decision did not become effective until October 1, 1985, after the cause of action accrued in the present case. At the time this cause of action accrued, the state was immune from tort liability when involved in a governmental function. Until October 1, 1985, the threshold question was whether the state was engaged in a proprietary or in a governmental function. *See McGaha v. Board of Regents of the University of Oklahoma*, 691 P.2d 895, 896 (Okla.1984).

Johnson argues that the operation of the hospital is a proprietary function under *Hershel*. In *Hershel*, the plaintiff sued the University Hospital. This Court held that the operation of the University Hospital at the time the cause of action accrued was a proprietary function and the hospital was not protected by sovereign immunity.

There are several distinctions between the University Hospital at the time of the *Hershel* decision and OCMH. First, the statutes applicable to the facts in *Hershel* explicitly stated that the legislature intended that University Hospital be a general hospital and that the hospital would be "available as a teaching hospital." *See* Okla.Stat. tit. 70, §§ 3306.1, 3306.4 (Supp. 1979). In holding that the operation of University Hospital was a proprietary function, this Court noted that the language of these statutes was "a stark contrast to the statutory language preceding [sections 3306.1 and 3306.4], 70 O.S.1971 § 3306 (enacted in 1965) which stated University Hos-

pital at the University of Oklahoma Medical Center shall be a teaching and training hospital for the said medical center." *Hershel*, 610 P.2d at 240.

In enacting statutes providing for OCMH, the legislature used the 1971 statutory language of section 3306 of title 70 applying to University Hospital requiring University Hospital to be a teaching and training hospital. The Oklahoma Statutes regarding OCMH provide:

It is the purpose and intent of this act to provide for a continuity of dependable funds for the operation of the Oklahoma Children's Memorial Hospital, and for a more efficient administration of the hospital, and *for the teaching and training of medical and other health related students and personnel*, and for the professional staffing of the hospital.

Okla.Stat. tit. 56, 336 (1981) (emphasis added). Section 338 provides:

The Department of Public Welfare shall operate and maintain the Oklahoma Children's Memorial Hospital as a hospital and service institution for persons under twenty-one (21) years of age.... It *shall* also be a teaching and training hospital for the University of Oklahoma Medical Center and other health and educational facilities.

(Emphasis added.) OCMH has no choice but to function as an educational institution. Sections 336 and 338, unlike the statutes in *Hershel*, definitely provide that a primary function of OCMH is educational.

Education is undoubtedly a governmental function. The Oklahoma Constitution declares, "Educational, reformatory, and penal institutions ... and such other institutions as the public good may require, shall be established and supported by the State in such manner as may be prescribed by law." Okla. Const. art. XXI, § 1. In *McGaha v. Board of Regents of the University of Oklahoma*, 691 P.2d 895 (Okla. 1984), this Court recognized that "[t]raditionally, education has been held to be a governmental function." The plaintiff in

*McGaha* sued the Board of Regents of the University of Oklahoma alleging that the University Hospital had been negligent. In ruling against the plaintiff, this Court held that education is a governmental function and that absent a waiver of sovereign immunity, the Board was protected from liability.

In the present case, the operation of OCMH was a governmental function and the state was immune from suit. Therefore, the trial court correctly rendered summary judgment in favor of defendants, OCMH and DHS.

CERTIORARI PREVIOUSLY GRANTED. COURT OF APPEALS' OPINION VACATED. TRIAL COURT'S JUDGMENT AFFIRMED.

SIMMS, HARGRAVE and WATT, JJ., concur.

OPALA, C.J., concurs by reason of stare decisis.

KAUGER, J., concurs in part, dissents in part.

ALMA WILSON and SUMMERS, JJ., dissent.

LAVENDER, J., not participating.