1999 OK CIV APP 74

**James W. STALEY, Appellee,**

v.

**CITY OF OILTON, Appellant.**

**No. 90,652.**

Court of Civil Appeals of Oklahoma, Division No. 4.

April 20, 1999.

Certiorari Denied June 29, 1999.

As Corrected Aug. 19, 1999.

Shanann Pinkham Passley, John H. Lieber, Eller and Detrich, Tulsa, Oklahoma, For Appellant.

Robert L. Smith, Tulsa, Oklahoma, For Appellee.

*OPINION*

TAYLOR, J.

¶1 Defendant, the City of Oilton (City), appeals the trial court's judgment on a jury verdict in favor of Plaintiff, James Staley, in this negligence action. Based on our review of the record and the applicable law, we find the trial court committed an error of law when it failed to recognize City's immunity from tort liability on Plaintiff's claim. We therefore reverse and remand with instructions to enter judgment for City.

¶2 Plaintiff filed this lawsuit in December 1993, seeking damages for personal injuries he allegedly suffered while performing community service work for City. The record reflects that Plaintiff was convicted in February 1993, in Oilton municipal court, of driving under the influence of alcohol, transporting an open container, failing to produce a drivers' license, and failing to produce proof of insurance. He was assessed fines totaling $478, payable within 60 days, but was given the option of performing an equivalent amount of community service work for City in lieu of the fines. He chose community service work, and was thereafter assigned to a work program administered by City's utility department. The work involved clearing

brush and trees from a fence line with a chain saw. In the process of doing the work, he suffered a facial and eye injury from a tree which hit him in the face. He sued City for negligence,[1] claiming damages in excess of $10,000.

■ ¶ 3 In the course of the proceedings, City filed two motions for summary judgment,[2] each of which claimed, among other grounds, that City was immune under the provisions of 57 O.S. Supp.1992 §§ 227 and 228.[3] The trial court denied the motions, finding that the immunity conferred by §§ 227 and 228 was intended to apply only to claims by prisoners under the supervision and control of the Oklahoma Department of Corrections (DOC). City then sought a writ of prohibition from the supreme court, in January 1997. The supreme court declined to exercise original jurisdiction, and denied the writ.[4]

¶ 4 Jury trial occurred in October 1997. The trial court denied City's demurrer to the evidence and motion for directed verdict. The jury found Plaintiff had suffered actual, total damages of $100,000, attributable 90% to City's negligence and 10% to Plaintiff's. The trial court entered judgment accordingly.

■ ¶ 5 City appeals. Among other allegations, it contends the trial court erred in its interpretation of §§ 227 and 228 as not granting immunity to City. We agree that the trial court erred in its interpretation of these statutes. Title 57 O.S. Supp.1992 §§ 227 and 228 state, in relevant part:

## § 227. Application—Exemption from Workers' Compensation Act—Liability for injuries

A. All provisions of this section and Section 228 of this title, except as otherwise noted herein, shall apply to eligible offenders who are:

1. Assigned to a work program for any government entity of this state pursuant to a municipal court order; . . .

C. All state and local government agencies, nonprofit organizations, community service agencies, educational programs and other treatment programs are hereby immune from liability for torts committed by or against any eligible offender described in subsection A of this section; . . .

## § 228. Tort immunity—Waiver—Insurance

A. The State of Oklahoma, all counties and municipalities of this state . . . are hereby immune from liability for torts committed by or against any eligible offender described in subsection A of Section 227 . . . The state, counties and municipalities waive their immunity from liability for all torts committed by any eligible offender described in subsection A of Section 227 . . . to the extent of liability expressly and directly established in the [Governmental] Tort Claims Act, Section 151 et seq. of Title 51 of the Oklahoma Statutes. *Provided, in no event shall the state, counties or municipalities be held liable for a deci-*

1. Specifically, Plaintiff asserted City was negligent in maintaining the premises in a defective and dangerous condition; in hiring and supervising individuals responsible for maintaining the premises; in failing to inspect the premises for hidden or latent conditions; in failing to provide Plaintiff with proper tools and safety equipment; in failing to warn Plaintiff of the dangerous condition of the premises; and in failing to provide Plaintiff with other workers to assist him in his work.

2. The first motion was filed in June 1994, the second in August 1996.

3. In support of its second motion for summary judgment, City attached a copy of the Court of Civil Appeals' opinion in Appeal No. 86,789, filed June 4, 1996, sustaining an order of the workers' compensation court three-judge panel finding that Plaintiff was not an employee under the state Workers' Compensation Act.

4. The supreme court's refusal to accept original jurisdiction and denial of an application for a writ of prohibition to prevent the trial court from proceeding further in a case on the grounds of sovereign immunity is not a determination of the issue that cannot be considered by this court on appeal. "A denial [by the supreme court] of an application for a writ of prohibition does not necessarily reflect any view on the merits, but rather may, and very often does, constitute only a ruling that the issuance of the extraordinary writ is unwarranted" under the circumstances presented. *McGaha v. Board of Regents of Univ. of Okla.,* 1984 OK 81, ¶ 3, 691 P.2d 895, 896 (footnote omitted).

sion to place an eligible offender in any of the programs described in subsection A of Section 227 of this title. ... (Emphasis added.)

¶ 6 The trial court held that the immunity conferred by those statutes did not apply to City because, in the court's view, Plaintiff was not an "eligible offender" to whom the statutes applied. The trial court's reasoning appears to have been based on its construction of the term "eligible offender" as synonymous with "prisoner," which is defined in § 216 as a "person under the custody and control of the Department of Corrections." Though there is no definition of "eligible offender" in this area of the Oklahoma Statutes,[5] "[w]hen interpreting a statute, we presume the legislature intended what it expressed in the statute, and we will follow the plain language accordingly." *Nichols Hills Physical Therapy v. Guthrie,* 1995 OK CIV APP 97, ¶ 2, 900 P.2d 1024, 1025.

■ ¶ 7 We construe §§ 227 and 228, viewed in their entirety and consistently with their plain language, as applying to a considerably broader classification of individuals than simply those who are subject to the supervision of the DOC. This construction is also necessary as offenders are not subjected to the control or custody of the DOC under the provisions of an order of a municipal court. We also note that 11 O.S.1991 § 27–122.2, which became effective on May 19, 1989, provides that, whenever any person is convicted in municipal court for violation of a municipal ordinance, the court may order the defendant to a term of community service or remedial action in lieu of a fine. Under our construction of §§ 227 and 228, the "plain meaning" of the term "eligible offender" includes an individual such as Plaintiff, an "offender" who was deemed eligible for community service by the municipal court and given

the option of performing community service work in lieu of paying a fine—an option which he then accepted.

■ ¶ 8 We also reject Plaintiff's argument that § 227 is inapplicable because there was not a "municipal order" formalized and on file in the municipal court file at the time that Plaintiff was injured.[6] In support of this argument, Plaintiff cites authority which holds that the minutes of a court clerk are not part of the record in a case. While we agree that a court clerk's minutes may not form a part of the formal record of a case for purposes of an appeal, this rule does not make a court's verbal order, rendered in open court, any less binding on the person who is subject to it. Particularly in light of the fact that Plaintiff admits he pled guilty to the offenses with which he was charged, that the municipal judge gave him the option of performing community service rather than paying a fine, and that he in fact performed the service pursuant to that choice, we decline to accept his argument that he was not "ordered" to do so, or that § 227 requires a formal written municipal court order before Plaintiff would become an "eligible offender" under the statute.

¶ 9 The trial court erred in interpreting §§ 227 and 228 as not conferring immunity on municipalities, such as City, for tort liability resulting from a municipal court's decision—the validity of which is not challenged—assigning Plaintiff to a community service work program. The matter should not have been submitted to a jury. Accordingly, the trial court's judgment is reversed, and this matter is remanded with instructions to enter judgment for City.

¶ 10 REVERSED AND REMANDED WITH INSTRUCTIONS.

---

5. The term "eligible offender" is defined at 22 O.S.1991 § 991a–4, for purposes of the Community Service Sentencing Program, the purpose of which is "to provide an alternative to incarceration for nonviolent felony offenders who would normally be sentenced to incarceration in a state institution." Section 227 expressly states, however, that it applies to offenders in numerous programs other than those involved in the § 991a–4 program, which it also covers; we thus

infer that the legislature intended the scope of a § 227 "eligible offender" to be broader, as well.

6. A written "municipal court order," signed by the municipal court judge and filed in September 1997, appears in the record as an attachment to one of Defendant's motions in the case. The order recites that Plaintiff was ordered to pay fines or perform community service within 60 days of his February 1993 hearing.

**946**

GOODMAN, P.J., concurs.

RAPP, J., concurs specially.

RAPP, J., specially concurring.

¶1 The history of the Prisoners Public Works Act ("Act") in effect on the date of Plaintiff's injury, 57 O.S. Supp.1993, §§ 216 et seq., establishes that the Act does afford the City of Oilton ("Oilton") immunity under these facts. It also must be noted that, in addition to the Act, a municipality has a separate grant of immunity as a program provider under the program administered by the Department of Corrections, that is, the Community Service Sentencing Program of Section 992a–4 of Title 22.

¶2 The Act originally was codified as 57 O.S. Supp.1975, §§ 215 et seq. The Act established a program under the auspices of the State Department of Corrections ("DOC") whereby "eligible" prisoners could be provided for public works projects. A "public works project" was one deemed by DOC to be "conducive to rehabilitation and reduction of recidivism among participating inmates" and as requested in writing by county, municipality, or state agency.

¶3 The Director of the DOC determined "which prisoners shall be eligible" and established "lists of prisoners" who were eligible. 57 O.S. Supp.1975, § 217. A "prisoner" meant any person under the custody and control of DOC. 57 O.S. Supp.1975, § 216.

¶4 A separate statutory provision dealt with utilizing prison labor at eleemosynary institutions. 57 O.S. Supp.1949, §§ 211–214. Section 214 specifically provided that the Warden and other prison officials enjoyed sovereign immunity in connection with activities under these provisions. No similar provision was enacted when the Act was first enacted in 1975.

¶5 The *Vanderpool v. State*, 1983 OK 82, 672 P.2d 1153, decision made history of the sovereign immunity doctrine. This was followed by the enactment of the Governmental Tort Claims Act ("GTCA") codified in 51 O.S. Supp.1984, §§ 151 et seq.

¶6 In 1984, the Legislature provided for tort immunity and codified the legislation as Sections 227 and 228 of Title 57. Laws 1984, c. 96. The provisions of that legislation were made applicable to persons *"assigned to a work program for any governmental entity of this state pursuant to a municipal court order."* Other portions made the legislation applicable to other forms of community or public work service as directed by other governmental units. All municipalities were made exempt from tort liability for such persons. 57 O.S. Supp.1984, § 227(A) & (B). The title to the legislation provided, in part, as follows:

> An Act relating to prisons and reformatories; declaring that any person confined in and authorized to be away from a county or municipal jail or correctional institution for certain purposes or sentenced to public service [exemption from workers' compensation] ... *providing that ... municipalities ... shall not be liable for injury to any such person; establishing immunity from liability* .... [Emphasis added.]

¶7 In 1988, the Community Service Sentencing Program ("CSSP") was enacted. Laws 1988, c. 150. This legislation added 22 O.S. Supp.1988, § 991a–4 and amended § 991. It also amended 57 O.S. Supp.1988, § 227 (the immunity section.) *Section 227 of Title 57 was amended to add to the list of persons covered by Section 227 those who were assigned to CSSP.*

¶8 Section 991a–4 of Title 22 created the CSSP as an *alternative to imprisonment of certain felons.* The term "eligible offender" was there introduced and defined. DOC was directed to establish a list of program participants, including municipalities. Section 994a–4(H) extended tort immunity to governmental entities, including municipalities, that participate in CSSP.

¶9 Then in 1991, Section 214 of Title 57, dealing with inmate labor for eleemosynary institutions, was amended to provide that DOC and its responsible officials were afforded the privileges of the GTCA. Laws 1991, c. 144, § 3. This same legislation, in some respects, expanded the scope of the Act, but it did not further incorporate any sovereign immunity procedures or privileges. Laws 1991, c. 144.

¶ 10 In 1992, Section 994a–4(H) of Title 22 (the CSSP legislation) was amended. The amendment expanded the scope of immunity to include, in addition to municipalities, other CSSP service providers. Laws 1992, c. 405, § 1. In addition, Section 227 of Title 57 was amended. In pertinent parts, the term "eligible offender" was substituted for "person" so that Sections 227 and 228 became applicable to "eligible offenders" assigned to one of the list of programs which included a person assigned "pursuant to municipal court order." The section on immunity also changed from "person" to "eligible offender."

¶ 11 Examination of the legislative evolution discloses that:

1. Originally there were two programs both operated by the DOC: Public Works Projects and Eleemosynary Institutions Labor. Although the term "eligible offender" was not used, the DOC determined which prisoners would be "eligible."

2. In 1984, a separate enactment, subsequent to *Vanderpool,* provided for tort immunity to "persons" assigned to work programs by municipal court order. Sections 227 and 228 of Title 57 were, at this point, not a part of the Public Works Act or Eleemosynary Institutions Act. *This suggests that municipal work programs were then an entirely separate matter.*

3. In 1988, the CSSP program was established and immunity extended to all governmental providers, that is, governmental entities providing a qualified program. Participants could include municipalities. Thus, Section 227 of Title 57 was amended to extend immunity to participants. *This is an additional, distinct, and separate immunity from that extended for municipalities against "persons" assigned by municipal court order.*

4. The ambiguity, if one exists, was introduced in the 1992 legislation which substituted "eligible offender" for "person" in Section 227. *If* the term in Section 227 has the same meaning as the definition in the CSSP of Section 991a–4 in Title 22 of the 1992 legislation, then the trial court ruled correctly because that class of "eligible offenders" is restricted to those who are felons and who qualify under the CSSP criteria. On the other hand, *if* the term "eligible offender" is given an "ordinary meaning" (25 O.S.1991, § 1) then the term could simply mean someone eligible for an assignment by a municipal court and the trial court's ruling would be erroneous.

¶ 12 However, for reasons subsequently stated, it must be here held that the trial court erred in its ruling. Moreover, "plain meaning" construction, while helpful, is not the precise reason for the conclusion that Oilton enjoys immunity. *Immunity attaches because there are two separate legislative Acts: the Community Service Sentencing Program of Title 22 and the Prisoners Public Works Act of Title 57.* Each of these Acts has a distinct function and each provides for immunity. A municipality, including Oilton, functions in different capacities under these Acts, but still enjoys immunity.

¶ 13 Title 22 applies to felons and is administered by DOC. Program providers may include municipalities. This Act contains its own immunity clause, Section 992a–4(J).

¶ 14 Title 57 codifies laws dealing with jails and prisons, including municipal jails. The Prisoners Public Works Act is codified in Title 57 and Section 227 is codified as a part of that Act.

¶ 15 Therefore, municipalities are granted immunity privileges under both Acts. Under CSSP, the municipality receives immunity as a program provider. Under the PPW, the municipality is granted immunity as the sentencing authority. Thus, Oilton here enjoyed immunity at the time of Plaintiff's injury.

¶ 16 For the above reasons, I concur with the majority.